ARKANSAS POWER & LIGHT COMPANY *v.* MASON.

4-4015 and 4-4135

Opinion delivered November 25, 1935.

*House, Moses & Holmes* and *Eugene R. Warren,* for appellant.

*V. D. Willis, Ben Henley, Sam Robinson* and *Sam T.* and *Tom Poe,* for appellees.

SMITH, J.  J. M. Mason brought this suit in his own name and for his own benefit and also as father and next friend of his infant son, John Henry, to recover damages to compensate an injury to his infant son which resulted in the loss of both his son's hands and a part of both arms.  The injury complained of necessitated the amputation of both arms just below the elbows.  The plaintiff recovered judgment for his own benefit in the sum of $5,000 and for the benefit of his son in the sum of $55,000 from which is this appeal.

The case was tried upon the theory that the boy, who was 12 years old, had come in contact with a defectively insulated guy wire attached to a pole of appellant, Arkansas Power & Light Company's, electric line situated on land leased to the father of the child.  Testimony was offered to the effect that the Power & Light Company had negligently allowed its defectively insulated guy wire to become charged with a heavy voltage of electricity. The defenses were made (a) that the guy wires of the pole, which was No. 465, where the boy was said to have been injured, were not and could not have been charged with electricity, and (b) that the boy was not burned at this pole but was in fact burned on a pole constructed, owned and operated by the city of Conway on a line running to the city's pumping station, which supplied the city with water pumped from Cadron Creek some miles

from the city. The power lines will hereinafter be distinguished by referring to one as the city's line and to the other as the company's line. The city's line is located between the house occupied by the plaintiff, Mason, and his family, and the company's line. The company's pole No. 465 measures 48 feet from the ground to the top and is 28 feet from the ground to the first cross-arm and 10 feet from the first cross-arm to the second cross-arm. It is eight feet from the lower cross-arm to the point where the guy wires are attached to the pole. There are two wires on the top arm and one on the lower and each carry 66,000 volts of electricity. The city's pole where the appellant contends the boy was burned is about 400 feet distant from the light company's pole, and is 22 feet, 9½ inches out of the ground and carries a 6,600 voltage. There is no guy wire attached to it.

In going from the house occupied by the Mason family to appellant's pole, which is in a wood lot controlled by the plaintiff on top of a hill where it is claimed the boy was burned and in returning from that pole to the house one must of necessity walk under the city's electric line.

On the day of the injury, which occurred between 4 and 5 P. M., February 12, 1934, the injured boy, who is 12 years old, accompanied by his younger brother, James, was on top of the hill engaged in sawing up a fallen tree into blocks with a cross-cut saw. This tree was near pole No. 465. After the blocks were sawed, they were hauled in a little iron wagon to the Mason home. Returning from one of these trips the younger brother started to lie down to rest when the older boy walked over to the defectively insulated guy wires attached to the company's pole No. 465 and while standing on the ground took hold of the guy wire and was burned on his hands and arms. This is the account of the injury as testified to by the plaintiff's two sons.

Opposed to this testimony was that in behalf of appellant to the effect that John Henry, the injured boy, was not found under pole No. 465, belonging to the company, but was found 400 feet down the hill and near one of the poles belonging to the city. The younger boy

testified that he assisted his older brother to walk this distance after he had been burned. Mrs. Lucille Martin, a neighbor of the Mason's, testified that she saw John Henry on top of the city pole. She heard a noise like an airplane and looking up saw two balls of fire. She saw the little boy fall from the pole and roll down the hill out of her sight. She saw Mr. Turner go to the boy. Mr. Turner was the first person to reach the boy.

Turner testified that when he came to the boy he thought the boy was dead, but found by running his hand in the boy's bosom that he was not. He found the boy some feet from the city's pole. On the morning following the accident Turner pointed out to J. C. Smith the pole where he found the boy. Smith testified that he was the lineman in charge of the city's electric lines, and that he climbed the pole which Turner had pointed out to him and upon reaching the wires he found on one of them some freshly burned flesh. Ferrell F. Fulmer testified that he lived near the scene of the accident. He heard a loud noise on one of the city's poles and a few minutes later saw Turner carrying the boy away from the city pole.

Certain rebuttal testimony was offered touching the opportunities the defendant's witnesses had had to see the things about which they testified.

Under the instruction of the court, the jury was required to find, before returning a verdict in favor of the plaintiff, that the boy was burned at the company's pole and not at the city's pole. Under the testimony herein summarized the jury returned a verdict for the plaintiff.

The complaint was filed in the Boone Circuit Court on November 16, 1934, about which time the plaintiff removed to that county. There was a trial to a jury beginning on January 18, 1935, and the verdict was rendered on January 19, 1935. A motion for a new trial was filed January 22, 1935, and overruled on the same day. On June 6, 1935, and after the expiration of the term of court at which the verdict was returned and the judgment herein entered, the defendant Power & Light Company filed a second motion for a new trial on the ground of newly-discovered evidence. A demurrer was

filed to the motion attacking the sufficiency of its allegations. The demurrer was sustained, and, the defendant declining to plead further, the motion was overruled and the new trial was refused. As a majority of the court think this was error, we discuss no other question.

The motion for a new trial with the supporting affidavits covers 30 pages of the transcript, and it is therefore too long to be copied into this opinion but excerpts from it read as follows:

"Petitioner stated that, since the trial of this action and since the overruling of its motion for a new trial, it has discovered new evidence which will justify this court in granting to it a new trial. Petitioner states that it did not know of the existence of 'this newly-discovered evidence at the time of the former trial and could not have known of such evidence by the exercise of due diligence; that the new evidence is relevant and material to the issues involved and of such character and cogency that it will change or at least probably change the outcome of this litigation. Petitioner states that when the accident to John Henry Mason occurred on February 12, 1934, it was reported as having occurred upon the electric line of the city of Conway and the newspapers, in reporting the news of the accident, stated that John Henry Mason had received electric burns on the city of Conway lines. It was not until many months later, when the suit was filed at Harrison, Arkansas, in November, that the petitioner knew that an effort would be made to place the liability for this accident on it. Because of the limited time prior to the trial of the suit, the petitioner did not come into the possession of the evidence which it now presents to the court in this petition. * * *

"Petitioner states that the said newly-discovered evidence is material for it in the trial of this cause of action, and petitioner could not, with reasonable diligence, have discovered and produced any of said evidence at the trial of the damage suit; that it used diligence in an attempt to discover any evidence that would be material to the issues in said trial, but that it was unable to discover any of the aforesaid newly-discovered

evidence, because at the time of the trial it did not know of the existence of such evidence.''

The motion recites the substance of 18 affidavits which are attached to and made a part of it. Several of these are merely cumulative of testimony offered at the trial. For instance, Mrs. Ada Padgett makes affidavit that she ''saw a man pick the boy up where he was injured.'' This is merely cumulative of the testimony of Mrs. Martin and of Turner set out above, and such testimony alone did not require the granting of a new trial, although it would be within the discretion of the trial judge to do so.

Other affidavits however are more significant and of greater importance. Their purport, if true, is to the effect that the plaintiff has perpetrated an egregious fraud upon the court by suing upon a cause of action which he knew did not exist. We copy one of these:

''I, W. H. Prince, state on oath, that I am acquainted with J. M. Mason, father of John Henry Mason, whose son was injured here in Faulkner County, Arkansas, by coming into contact with an electric wire; and further state that, some time after the accident to his son, he came to me and wanted to know if he could recover anything out of it, and I asked him who it was that injured his son, and he told me the Conway Light, Power, Water System here in Conway; and I told Mason he could not recover anything if that was the case, as it was a municipality, and he seemed like he was not satisfied with my advice, and then I told him I would go and see Mr. Hartje and Mr. Robins, attorneys here, and talk the matter over with them, but I knew he had no right of action. I then went to Mr. Robins and Mr. Hartje and told them about the matter, and they said there could be no right of action if that was the case. The reason Mr. Mason came to me about the matter was, Mr. Hartje and myself had settled a damage suit for him against the Conway Cotton Oil Company. The next thing I heard of the matter was suit was filed against the Arkansas Power & Light Company at Harrison, Arkansas.

''W. H. Prince.''

There are other affidavits to the effect that the plaintiff, Mason, had stated before the trial that his son was burned on one of the poles owned by the city, and not on a pole owned by the power and light company. If this is true, it would be an abuse of discretion not to afford relief if this may be done without violating the statutes or settled rules of practice.

By the seventh paragraph of § 1311, Crawford & Moses' Digest, it is provided that a new trial may be granted for ''Seventh. Newly-discovered evidence, material for the party applying, which he could not, with reasonable diligence, have discovered and produced at the trial.''

Section 1316, Crawford & Moses' Digest, prescribes the practice where the evidence was not discovered, and the motion was not filed until after the expiration of the term of court at which the trial was had and the judgment rendered. The motion in this case was filed in conformity with this section after the adjournment of the trial term of court.

These sections of the statute have been construed and applied in many cases, and it is not the purpose of this opinion to impair their authority to any extent. The statute requires that the newly-discovered evidence shall be material and that the moving party shall have used reasonable diligence to discover it. We have interpreted this statute to mean that the newly-discovered evidence, to be material within its meaning, shall not be merely cumulative or impeaching in character, and it must appear that it was discovered after the trial and would probably have changed the result had it been offered at the trial. It is insisted that under this practice the action of the trial court was correct in sustaining the demurrer to the motion for two reasons, (a) no diligence was shown, and (b) the testimony is merely cumulative of other testimony offered at the trial.

It is to be remembered that the complaint in this case was filed in the Boone Circuit Court on November 16, 1934, and that the trial was had on January 18, 1935, which was two months and two days later. It is true this accident occurred in February, 1934, but it is true

also that after its occurrence, as the motion alleges, the local papers published accounts of the accident, relating that the boy was burned on one of the city's poles. Of course, no one was bound by these newspaper reports, but on the other hand the light company would not be expected to investigate an injury for which it apparently was not responsible.

The trial did not occur in Faulkner County where the plaintiff had resided for many years and in which the city of Conway was located, nor in an adjoining county. Therefore the personal attendance of witnesses could not be compelled. Section 4161, Crawford & Moses' Digest.

Now the plaintiff had the legal right to sue and to have the case tried in the Boone Circuit Court, but every one knows, and this court may therefore judicially know, that the short intensive terms of circuit court in the smaller towns and cities attract many persons who are not litigants, and are not in attendance in response to subpoenas requiring their presence. Had this trial occurred in Faulkner County where the plaintiff had lived for many years and where the accident had occurred, there might have been a discussion of the case there which could not have occurred in Boone County where the parties were unknown. The defendant might have thus acquired the information set out in the motion in time to have used it at the trial. Of course, this circumstance is not conclusive of the question of diligence, but it is not without some value in considering whether the defendant was diligent. The defendant's opportunity of acquiring this information was lessened by the fact that the trial did not occur in the place where the information could have been had.

The father is the actual and responsible litigant in the case, although he did not sue or recover for his own benefit only. The allegations of the motion which the affidavits fully support are to the effect that he caused the suit to be brought upon a cause of action which he knew did not exist. Such evidence is not merely cumulative or impeaching in its character. It goes to the very basis of the suit. No investigation of the accident

itself could have disclosed this fact. The persons by whom it is now proposed to make this proof did not see the accident. The motion alleges this evidence was not discovered and could not have been until after the trial. There does not therefore appear to have been a lack of reasonable diligence.

The instant record is not unlike that of *Baldwin* v. *Pilgreen,* 188 Ark. 131, 64 S. W. (2d) 336. In that case the plaintiff testified that he had been injured by having the wheels of a train run over two of his fingers. The opinion recites there was testimony to the effect that plaintiff had been injured in the manner alleged, but that there was also testimony to the effect that he had been injured by being knocked off the running board of an automobile. A supplemental motion for a new trial was filed on the ground of the newly-discovered evidence reciting that two persons saw the plaintiff riding on the running board of an automobile, the door of which was slammed on the plaintiff's fingers. This testimony supported the theory upon which the case had been defended. It was cumulative of other testimony which had been offered at the trial but its effect was to show that the plaintiff had perpetrated a fraud upon the court by suing on a cause of action which he knew was nonexistent. The court said: ''This testimony was relevant and material to the issues involved and was of such character and cogency that it might have had the effect of changing the result, and, on this account, the court should have granted a new trial.'' The case of *Fosgren* v. *Massey,* 185 Ark. 90, 46 S. W. (2d) 20, is cited to support the decision.

The case of *Fosgren* v. *Massey, supra,* was one in which the controverted question was whether the plaintiff had been injured and the extent of the injury. A motion for a new trial was filed upon the ground that the plaintiff's injury was simulated, and it was held that such testimony was not cumulative merely, ''as it tended to break down the evidence of appellee,'' the plaintiff.

The case of *Medlock* v. *Jones,* 152 Ark. 57, 237 S. W. 438, was cited as authority for this decision. This last cited case was submitted to a jury upon conflicting

evidence as to adverse possession. A motion for a new trial for newly-discovered evidence was filed in which it was alleged that a party to the litigation had made statements in direct conflict with her testimony at the trial. The motion was resisted because first it was not shown why the new evidence was not discovered before the trial and second that diligence was not used in discovering it before the trial. In disposing of this motion it was said:

"The evidence was not of that character which could be discovered before it was disclosed by the witness, W. H. Duff. It is stated in the motion that W. H. Duff did not communicate the fact to appellant until after the rendition of the judgment. The motion also states that for that reason the same was not obtained and used in the trial of said cause. We think the motion sufficiently shows why the evidence was not discovered before the trial, and, inferentially, why more diligence was not used than was used in procuring it. Again, appellee suggests that the evidence is cumulative, and for that reason the court properly overruled the motion for a new trial. The newly-discovered evidence was in the nature of an admission made by appellee that her sister, Sallie Winston, owned an undivided one-third interest in the land. It tended to break down the evidence of appellee. Appellee's whole case rested upon the truth of her own testimony." The judgment was therefore reversed, and the cause remanded for a new trial on account of the error in refusing the new trial because of newly-discovered evidence.

The evidence here is of the same character, and has the same effect, and we are therefore of the opinion that the motion for a new trial should have been heard upon its merits. The judgment is therefore reversed, and the cause remanded.

HUMPHREYS and MEHAFFY, JJ., dissent.