DACUS v. STATE.

Criminal 4085

Opinion delivered June 13, 1938.

438

*Jeff Bratton,* for appellant.

*Jack Holt,* Attorney General, and *John P. Streepey,* Assistant, for appellee.

SMITH, J. This appeal is from a judgment of the Greene circuit court sentencing appellant to a term of imprisonment in the state penitentiary for two years, upon his conviction for the crime of voluntary manslaughter, under an indictment charging him with having killed Frank Switzer.

It is insisted for the reversal of this judgment (a) that the undisputed testimony shows that the killing was done in necessary self-defense; (b) that the alleged dying declaration of the deceased was improperly admitted in evidence; (c) that the court erred in giving certain instructions; (d) that it was error not to order a mistrial upon the occurrence of an incident during its progress which will later be discussed; and (e) that error was committed in refusing a new trial upon the ground of newly-discovered evidence.

The first assignment of error appears to be the one chiefly relied upon, at least the major portion of appellant's brief is devoted to its discussion.

Appellant had a lawsuit with Louis Switzer, a brother of deceased, the day before the killing, at which trial deceased and one Monroe Swindel were called as witnesses. Appellant was much incensed at their testimony, and on the morning of the killing cursed deceased Switzer violently. Later in the day Switzer and Swindel, while picking cotton, saw appellant driving through the field with a load of corn, and they started to the road to intercept him. The testimony is in irreconcilable con-

flict as to what happened thereafter. Appellant killed both Switzer and Swindel by stabbing them with his knife. Only the participants to this duel to the death were present and heard what was said. Appellant's testimony was to the effect that he was hailed by Switzer and Swindel, and stopped his wagon at their command to see what they wanted. They avowed their intention of killing him, whereupon, to better defend himself, he slid to the ground off the side of the wagon, whereupon both Switzer and Swindel assaulted him with knives and began cutting and stabbing him, when, to defend himself, he drew and opened his own knife and began cutting his assailants. Appellant was badly whittled up, and the attending doctor stated that appellant himself narrowly escaped death. Certain witnesses who saw the fight from a distance gave testimony tending to support this version of the encounter.

A statement called a dying declaration of Switzer was read in evidence. It was to the effect that as he and Swindel approached the wagon appellant stopped his team before they reached the road in the field, and said, "I will kill both you son-o-bitches," and without anything else being said appellant jumped from his wagon and began stabbing Swindel. Both Swindel and appellant fell to the ground, and "Swindel hallooed for me to pull him off and then he (appellant) cut me." Switzer's statement was to the effect that he was unarmed, that he had no knife, and did none of the cutting. Appellant's testimony was to the effect that both Switzer and Swindel were armed with knives, and that each of them cut and stabbed appellant, and without further recitation of appellant's testimony it may be said that it was to the effect that when appellant saw a murderous assault was about to be made upon him he killed both Swindel and Switzer in his necessary self-defense.

This issue of fact was submitted under instructions which have many times been approved by this court, and it cannot be said that the verdict of the jury was unsupported by the testimony. The jury may well have found that appellant made no effort to avoid the difficulty

by driving on with his team, but, on the contrary, stopped his team and awaited the arrival of his adversaries. It was appellant who first spoke, and his remark was that "I will kill both you sons-o-bitches," at least this was the testimony on the part of the state.

Mrs. Melvin Adams, who was in an adjacent cotton field, testified that she saw Swindel and Switzer go to the wagon, and the fight started as soon as they reached it. Witness could not see Switzer, but she saw appellant strike the first blow when he struck Swindel. She saw no knife in appellant's hand, but the team ran away, and she went to the scene of the fight when it was over, where she found Swindel dead and Switzer lying in the road. Appellant followed his wagon after the team ran away with it. Other witnesses who saw something of the fight testified. Their testimony corroborated that of Mrs. Adams in some respects, and contradicted her testimony in other respects.

When the dying declaration, which had been reduced to writing by the deputy prosecuting attorney, was offered in evidence, the court ruled that it should not be admitted in evidence unless "it had been made in the immediate contemplation of death," whereupon, in the absence of the jury, the court heard testimony upon this issue for the purpose of determining whether the declaration should be admitted in evidence. It did not contain the recital that Switzer said he knew he was going to die, but Dr. Blackwood, the attending physician, testified that when the deputy prosecuting attorney, who wrote the declaration, asked if he should write that statement, he, the doctor, said, "No, for God sake not to give it to him and read it to him that way! He didn't have much show to live and I wanted him to have all the show he could. I wanted to look after the interest of the patient and as far as I am saying he absolutely thought he was going to die. I don't think he said that in so many words."

Dr. Blackwood described the wounds of all the participants. He said appellant had narrowly escaped being killed, and would have been had the knife been sharp

with which he was cut. Swindel was cut eight or ten times. Switzer had been stabbed only twice, both wounds being on the left side, one just at the end of the scapula. The doctor thought Switzer would die as soon as he examined him, and it was his opinion that Switzer also thought he was going to die. In detailing what Switzer said the doctor testified: "He (appellant) said he had killed one and it looked like he had about got the job completed on him. In other words, he must have said one was dead and he soon would be." The doctor was asked: "Q. That was what you understood it to mean? A. That is what I got from his statement. Q. From that, is it your opinion that he thought he was going to die? A. Yes, sir." Switzer pressed the doctor for his opinion after Switzer had been carried home and placed in bed. He told Switzer his chances were slim, and it was after being so advised that Switzer made this statement which the deputy prosecuting attorney reduced to writing.

Melvin Adams testified that when he reached the scene of the killing Switzer said: "Melvin, take me home, I want to see my wife and babies before I die." Switzer told Adams that appellant said, "I aim to kill both you God damned sons of bitches right here." He said that appellant had killed Swindel, "and I think he has got me."

Switzer's wife testified that when her husband had been brought home he said to her, "Be sure to take care of the little ones, because I can never get well." Switzer lived 48 or 50 hours after being stabbed. He was carried to the hospital on the day of the fight in an unconscious condition and died at the hospital without knowing where he was and without making any additional statement.

We think this testimony justified the court in submitting to the jury the statement which the deputy prosecuting attorney had prepared as the dying declaration of Switzer. *Taylor* v. *State,* 193 Ark. 691, 101 S. W. 2d 956.

Instructions complained of are objected to upon the ground that they submitted to the jury the question whether appellant had killed Switzer in self-defense, whereas there was no testimony to the contrary. We think, however, that it appears from the testimony above recited that this was an issue of fact which was properly submitted to the jury.

The incident hereinabove referred to which appellant insists should have caused a mistrial to be ordered was the death of J. T. Craig, an attorney assisting in the prosecution. Mr. Craig made the opening argument for the state, at the conclusion of which he fell dead in the courtroom. The failure of the court to then order a mistrial is assigned as error. This assignment of error may be disposed of by saying that appellant made no objection to the continuance of the trial. It is unnecessary to determine, therefore, what action should have been taken had that objection been made.

It is finally insisted that a new trial should have been granted on the ground of newly-discovered evidence, this evidence being the affidavits of certain affiants to the effect that Mrs. Adams, who testified that she saw appellant strike the first blow, could not have seen that act standing where she said she stood. This was one of the sharply contested issues of fact in the case, and the law is definitely settled that newly-discovered evidence which is merely cumulative or tends only to impeach the credit of a witness is no ground for a new trial. *Jones* v. *State*, 72 Ark. 404, 80 S. W. 1088; *Hayes* v. *State*, 142 Ark. 587, 219 S. W. 312; *Murphy* v. *Willis*, 143 Ark. 1, 219 S. W. 776; *Bradley Lbr. Co.* v. *Beasley*, 160 Ark. 622, 255 S. W. 18; *Arkansas Power & Light Co.* v. *Mart*, 188 Ark. 202, 65 S. W. 2d 39; *Arkansas Power & Light Co.* v. *Mason*, 191 Ark. 804, 87 S. W. 2d 988.

No error appearing, the judgment must be affirmed, and it is so ordered.