**George R. Knight, Appellant, v. Citizens Coach Company, Appellee.**

Opinion filed October 28, 1940. Rehearing denied December 11, 1940.

JACOBY & PATTON, JOHN B. COPPINGER, JR., and FRANK L. MANNS, all of Alton, for appellant.

GREEN & HOAGLAND, of Alton, for appellee; J. J. MIDDLETON, of Alton, of counsel.

MR. JUSTICE DADY delivered the opinion of the court.

This is a motor vehicle accident case in which plaintiff contends that while walking upon a street crosswalk he was struck and injured by a bus of defendant. Plaintiff appeals from a judgment of the trial court based on a verdict directed in favor of defendant at the conclusion of plaintiff's case in chief.

Each count of the complaint charged that at the time in question plaintiff was walking on a crosswalk. Each count charged and the answer admitted that at the time in question there were no traffic control signals in position or operation at the intersection. The first count charged general negligence. The second count pleaded the statute which provides that where traffic control signals are not in place or in operation, the driver of a vehicle shall yield the right of way, slowing down or stopping if need be to so yield, to a pedestrian crossing the roadway within any marked crosswalk or within any unmarked crosswalk at an intersection, and charged that the defendant negligently failed to yield the right of way to the plaintiff, but carelessly and negligently drove upon and against the plaintiff. The third count charged that the defendant wilfully and wantonly drove upon and against the person of the plaintiff. The answer denied that plaintiff was walking on any crosswalk, but charged plaintiff was "then and there walking a great or con-

siderable distance west of the intersection," denied that defendant failed to yield the right of way, and denied any negligence or wilful or wanton misconduct.

On March 8, 1939, about eight a. m., plaintiff, aged 67 years, while walking from the northerly to the southerly side of Broadway street, in the city of Alton, was struck and seriously injured by a bus of defendant. Broadway runs east and west and intersects Alton street, which runs north and south. Broadway is 59 feet wide and Alton 40 feet wide. Dennis' Brothers store is located at the northeast corner of the intersection. Foster's drug store is located at the northwest corner and has a frontage of 33 feet on Broadway. Reiss' studio is on the north side of Broadway and immediately west of the drug store and has a frontage of 30 feet on Broadway. The crosswalk from the northwest corner to the southwest corner of the intersection was not marked or outlined as is generally or frequently the case in a city. Plaintiff testified that a "single" black line, supposedly of tar, ran across Broadway from the west curb line of Alton street, extended southerly, and that this black line was used by pedestrians in walking across Broadway. At the time in question there were no traffic control signals in position or operation at the intersection.

Plaintiff testified that he walked south on the east side of Alton street to Broadway, then crossed Alton street to the northwest corner of the intersection; that he did not know if he went up on the sidewalk "at Foster's"; that he then looked to the east to see if anything was coming and saw the bus unloading passengers at the northeast corner, and then started across Broadway "where there is a black line to get across the street"; that "I don't know how many steps, I don't remember that, the next I remember I was in the hospital"; that the black line "goes right straight across Broadway about even with the east end of the sidewalk coming down Alton Street"; that another

bus, a small one, was parked on Broadway in front of the drug store, about 5 or 6 feet west from the corner and about 5 or 6 feet west from where he started across; that "I looked east bèfore I started to cross the street, and I saw a bus stop in front of Dennis' Brothers Store, and if I recall there were some girls getting off; that's the last thing I remember, . . . I could not tell you when and where I was struck, . . . I know I wasn't struck approximately forty feet west of the intersection. I know that I went straight across."

A passenger on the bus testified he was sitting on a side seat facing north; that the bus was about 25 feet long and was "operated at between twenty and twenty-five miles per hour," that he guessed about 25 miles per hour, and did not stop at the northeast corner; that he thought it came "straight down Broadway"; that he did not see the plaintiff struck, but felt the brakes applied and heard the impact; that at the moment of the impact the bus was west of Alton street, "probably twenty-five feet west from the corner"; that after the impact the bus traveled about 20 feet, and when it stopped the front end was at the "division" between the Reiss studio and the Foster drug store and the rear end at about the middle of the Foster drug store; that he went into the drug store to call an ambulance and when he came out he saw plaintiff lying at about the middle of the street and about 33 feet west of the intersection. On recross he testified "When I first felt the impact Mr. Knight was, I think, right at the corner, I am not positive."

Another passenger testified he was seated three seats back from the front end of the bus; that he did not remember the bus picking up any passengers at the northeast corner of the intersection; that he was watching the driver of the bus "and I saw him put his foot on the brake and just before that I saw Mr. Knight's hat coming in front of the windshield,

. . . I saw Mr. Knight's face come in front of the windshield and his hat was out in the air,'' and he was knocked probably 30 or 35 feet; that the front of the bus was just about on the crossing when he saw plaintiff's head; that the bus was not going at any high speed, just a normal speed; that the bus might have run the length of itself before it stopped, and when he got off the bus plaintiff was lying 30 or 35 feet from the corner and the back of the bus was just about even with the corner, and that prior to the accident the witness did not notice any traffic on Alton street going north and south, and did not notice any automobiles in front of the bus; that as the bus approached and crossed Alton street it was on the north side of the street.

Another witness testified that he reached the scene of the accident about two or three minutes after the accident and that plaintiff was then lying in the street about 20 feet south of the north curb and about 30 or 35 feet west of the west curb of Alton street.

The bus driver testified that at the time the bus struck Mr. Knight the latter was about even with the west line of the Foster drug store and about 8 or 10 feet south of the north curb line of Broadway.

The foregoing was all of the evidence material to the present issues.

Plaintiff's motion for a new trial was duly made and overruled, and the trial court entered judgment on the verdict in favor of the defendant.

We do not consider it necessary, or proper for us to pass upon the question of whether or not plaintiff made out a prima facie case for the reason that in our opinion the court erred in not granting a new trial on the ground of newly discovered evidence.

In his verified motion for a new trial plaintiff stated that since the trial he had discovered an eyewitness, namely, one Bartley, whom he did not know existed until after the trial; that the plaintiff searched and

caused to be searched the vicinity in and about the scene of the accident and in and about the city of Alton for many days in an effort to find eyewitnesses to the accident; that all known passengers on the bus and by-standers in the vicinity of the accident were inter-viewed in an effort to locate eyewitnesses, that no such evidence could be found, and that it was by accident that Bartley was discovered. In support of such motion he presented and filed the affidavits of Bartley, Jacoby and Coppinger.

In his affidavit Bartley stated that at the time of the accident he was walking east on the north side of Broadway just west of Alton street and just in front of the Reiss studio; that he saw a man (whom he later identified as the plaintiff) standing on the sidewalk, right at the corner of Foster's drug store, and the man was starting across Broadway from the drug store to the south; that the man looked to his left or to the east as he started to walk across Broadway; that such man was walking straight across the street from the northwest corner to the southwest corner of the inter-section in question, about 3 feet west of the black ex-pansion point which crosses Broadway from the north to the south, and was walking parallel to such black line; that the man was about two-thirds of the distance from the north curb to the north rail of the street car tracks when Bartley first saw the bus in question ap-proaching from the man's left; that the bus was going at approximately 35 miles an hour and was then in front of the southwest corner of Dennis' brothers store and in the westbound traffic lane, and did not seem to swing into the corner at Dennis' brothers to make a stop; that Bartley did not hear any horn or signal from the bus; that the bus ran into the man and tossed the man about 5 or 6 feet ahead of the bus, and that when the bus stopped the man was lying on the pavement about 5 or 6 feet ahead of the bus and at about the center of the street, and just about in front of the

Reiss Studio; that the plaintiff was in the crosswalk when he was hit; that Bartley did not talk about the case until after the case was tried, when he first learned that his testimony would be useful.

In his affidavit Jacoby stated that, as attorney for the plaintiff, he investigated and prepared the case for trial and personally devoted 10 hours of his time in endeavoring to find witnesses who saw the plaintiff struck by the bus; that he did not discover Bartley, but Bartley was discovered subsequent to the trial.

In his affidavit Coppinger stated that as attorney for the plaintiff he assisted in preparing the case for trial by interviewing witnesses; that he personally devoted 40 hours of his time in endeavoring to find witnesses who saw plaintiff struck by the bus; that his investigation consisted of a canvass of the scene of the accident from door to door for a distance of more than one block from the scene of the accident; that he personally talked to all witnesses who said they were passengers on the bus and to any and all persons who said they knew anything at all about the accident, and to any and all persons whom witnesses on the bus said knew anything about the accident; that he did not know Bartley or that Bartley was a witness at the scene of the accident until after the trial.

We believe this motion for a new trial, supported by such affidavits, fully met all of the requirements necessary to entitle the plaintiff to a new trial on the ground of newly discovered evidence, which requirements are set forth in *People v. Williams,* 242 Ill. 197. Where there is diligence and the new matter does not conflict with the rule concerning cumulative evidence, and is such as to strengthen the conviction that justice has not been done, a new trial should be granted, and in such cases the courts should not hesitate to grant a new trial. (*People v. Heinin,* 300 Ill. 498; *Swiney v. Miller,* 253 Ill. App. 81.)

On the trial no witness testified as to the conduct of the plaintiff after he started to cross the street until he was struck; no one testified that the plaintiff at the time of the accident was "walking straight across the street from the northwest corner to the southwest corner," or that in so doing the plaintiff was walking about 3 feet west of and parallel to the black line heretofore referred to, or that the plaintiff was about two-thirds of the distance from the north curb to the north rail of the street car tracks when the bus approached him, and no witness gave testimony tending to show that no horn was blown or signal given by the driver of the bus. These facts were very material and would not be cumulative evidence.

We are of the opinion that the evidence so introduced by plaintiff on the trial, together with such testimony of the witness Bartley, would present a prima facie case which should be submitted to the jury. See *Deford v. Lohmeyer,* 147 Md. 472, 128 Atl. 454; *Nicholas v. Leslie,* 7 Cal. App. (2d) 590, 46 P. (2d) 761 and *Volpe v. Perruzzi,* 123 N. J. L. 323, 8 Atl. (2d) 580, in each of which cases a pedestrian on a crosswalk was injured by an automobile, and in each of which cases it was held in effect that plaintiff made out a prima facie case.

*Reversed and remanded.*