**CENTRAL & SOUTH WEST UTILITIES CO. et al. v. SECURITIES AND EXCHANGE COMMISSION.**

No. 8333.

United States Court of Appeals for the District of Columbia.

Argued April 8, 1943.

Decided June 7, 1943.

Mr. George Roberts, of New York City, pro hac vice, by special leave of Court, with whom Messrs. Ralph D. Stevenson, of Chicago, Ill., pro hac vice, by special leave of Court, and Howard C. Westwood of Washington, D. C., were on the brief, for petitioners. Mr. Richard A. Moore, of Washington, D. C., also entered an appearance for the petitioners.

Mr. Homer Kripke, Assistant Solicitor, Securities and Exchange Commission, of Philadelphia, Pa., with whom Mr. John F.

Davis, Solicitor, Securities and Exchange Commission, of Philadelphia, Pa., was on the brief, for respondent.

Before MILLER, EDGERTON, and ARNOLD, Associate Justices.

EDGERTON, Associate Justice.

We have to review orders of the Securities and Exchange Commission which required the petitioners, the Middle West Corporation and its subsidiaries (1) Central and South West Utilities Company and (2) American Public Service Company, to end the corporate existence of either Central or American and to substitute a single common stock for the present capitalization of Central and American. Both Central and American are nonoperating public utility holding companies which perform no services for their subsidiaries. The substance of the attack upon the orders is that they require the elimination of preferred stocks and that they are mandatory. Petitioners themselves had submitted to the Commission under Sections 6(a) and 7 of the Public Utility Act of 1935 a plan which would have eliminated one of the corporations, but that plan would have permitted a preferred stock and would have become effective only if approved by the security holders. The Commission, in the same orders, disapproved petitioners' plan.

Section 11(b) (2) of the Public Utility Act of 1935[1] directs the Commission "To require by order, after notice and opportunity for hearing, that each registered holding company, and each subsidiary company thereof, shall take such steps as the Commission shall find necessary to ensure that the corporate structure or continued existence of any company in the holding-company system does not unduly or unnecessarily complicate the structure, or unfairly or inequitably distribute voting power among security holders, of such holding-company system." The Act expressly recognizes that investors and the public are likely to be adversely affected when securities of holding companies or subsidiaries "are issued upon the basis of fictitious or unsound asset values having no fair relation to * * * earning capacity," or when control of subsidiaries "is exerted through disproportionately small investment."[2]

The Commission's findings and opinion[3] give a detailed description of petitioners which we need not repeat. The Commission found that a preferred stock would not be reasonably adapted to security structure or earning power, and that it would unnecessarily complicate the holding company systems of the new corporation and of Middle West. It found also that petitioners' plan, with its provision for preferred and common stock, would give Middle West "voting power and voting control out of proportion to its stake in the holding company system of the proposed new corporation." This is as much as to say that it would "unfairly or inequitably distribute voting power." These conclusions of the Commission were based on an extensive analysis of the financial condition and earning power of Central, American, and their subsidiaries. This analysis showed substantially the following facts, among others. No dividends had been paid on the common stock of Central since 1932 or on the common stock of American since 1931. Regular dividends were earned and paid on the perferred stock of American after 1939 and on the prior lien preferred stock of Central after 1937, but no dividends had been paid on the $7 preferred stock of Central since 1932. Dividends on all preferred stocks of Central and American were greatly in arrear. Though some payments have since been made on account of arrears, the vice-president of Middle West testified that on the basis of anticipated earnings it would take at least 25 or 30 years to pay them in full. Since Central and American own chiefly the common stocks of their subsidiaries, any preferred stock of Central or American or their successor is necessarily junior to the debts and preferred stocks of the subsidiaries. Interest charges and preferred-stock dividends of the subsidiaries absorb so much of their gross income that a decrease of about 35 per cent in that income would leave nothing for Central and American. Subsidiary debts plus subsidiary preferred stock amount to 74.7 per cent of total capitalization and 79 per cent of depreciated plant account. The Commission said: "The addition of a holding company preferred stock to the extent of 10.6% (and a small amount of holding company debt) results in a top-heavy structure—over 85% senior

---

[1] 49 Stat. 803, 821; 15 U.S.C.A. § 79k (b) (2).

[2] §§ 1(b) (1), 1(b) (3), 15 U.S.C.A. §§ 79a(b) (1), 79a(b) (3).

[3] 11 S.E.C.

securities and less than 15% common stock and surplus. We would not sanction such a structure for an operating company. No more can we sanction it merely because a holding company is introduced into the picture. Indeed, the introduction of the holding company creates a possibility that security holders of the holding company may be deceived and may not realize that their so-called preferred stock has behind it only a thin equity represented by operating company common stocks." Under petitioners' plan the thin equity of the new holding company's common stock, owned chiefly by Middle West, would have 84 per cent of the voting power.

■■ These and other findings of the Commission are supported by evidence. There is no dispute as to any basic fact. In our opinion the findings support the orders. It may reasonably be thought that a preferred stock in this situation would cause voting power to be inequitably distributed. When earnings and assets of subsidiaries are not sufficient to provide for any of the stock of a holding company the considerable degree of security which the public attributes to preferred stock, it may reasonably be thought that division of the holding company's stock into preferred and common will "unduly or unnecessarily complicate the structure" of the system.

■ Petitioners show that their financial position has improved somewhat since the Commission held its hearings. Section 11 (b) authorizes the Commission to revoke or modify its order, after notice and hearing, in response to changed conditions, and there is no reason to assume that it will not do so if sufficient occasion arises. Nevertheless petitioners now ask leave, under Section 24(a) of the Act,[4] to adduce their improved position as "additional evidence" in the completed hearings which led to the present order. We need not decide whether supervening events of this general sort may sometimes be "additional evidence" within the meaning of Section 24(a). If so, final administrative disposition and judicial review may often be prevented altogether by the mere fact that they take time. In any event, the improvements to which petitioners call our attention are in our judgment relatively too small and too brief to be "material" within the meaning of Section 24(a). In other words, they do not seem to us to have any important bearing upon the Commission's conclusions. The motion for leave to introduce additional evidence is denied.

Petitioners make a number of contentions which we have not discussed. We should have to discuss some of them were it not for the opinion of Judge Maris in Commonwealth & Southern Corporation v. Securities and Exchange Commission.[5] That case resembles this in several respects, and we concur in the views there expressed.

Affirmed.

5 3 Cir., 134 F.2d 747. Cf. North American Company v. Securities and Exchange Commission, 2 Cir., 133 F.2d 148; City National Bank & Trust Co. of Chicago v. Securities and Exchange Commission, 7 Cir., 134 F.2d 65.