Louis WEINSTOCK, Appellant,

v.

UNITED STATES of America, Appellee.

No. 12656.

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 5, 1955.

Decided Jan. 5, 1956.

Danaher, Circuit Judge, dissented.

Mr. Harry Sacher, New York City, of the bar of the Court of Appeals of New York, pro hac vice, by special leave of Court, with whom Messrs. Joseph Forer and David Rein, Washington, D. C., were on the brief, for appellant.

Mr. John D. Lane, Asst. U. S. Atty., with whom Mr. Leo A. Rover, U. S. Atty., Messrs. Lewis Carroll and William Hitz, Asst. U. S. Attys., and Mr. Cecil R. Heflin, Attorney, Dept. of Justice, were on the brief, for appellee.

Before PRETTYMAN, FAHY and DANAHER, Circuit Judges.

PRETTYMAN, Circuit Judge.

Appellant was indicted on two counts for making a false statement before an agency of the United States and was convicted on one count. The false statement was alleged to have been made in an affidavit filed by him with the Subversive Activities Control Board.

The Attorney General of the United States filed with the Board, on April 22, 1953, a petition against the "United May Day Committee".[1] He sought to require the Committee to register as a Communist-front organization. In his petition he alleged: "From in or about 1946 up to and including the date of the filing of this petition and continuing thereafter, there has existed and operated in the United States an organization known by various names, which is now known as the United May Day Committee (hereinafter referred to as the UMDC)." On May 6, 1953, a copy of the petition was served upon appellant, he being described in the marshal's return upon the service as "Chairman, United May Day Committee". Weinstock filed a motion to quash the service. The pertinent part of that motion was:

"3. There is no Respondent upon which service can be made or against which the relief prayed for in the petition can be granted for the reason that the United May Day Committee is not in existence, either under that name or any other name, and was not in existence on the date of service of the petition on movant.

"Movant submits the annexed affidavit in support of the foregoing motion."

The supporting affidavit was in eleven paragraphs. It is long, but in order to understand our position in the case it is necessary that nearly the whole of it be read. We have therefore reproduced paragraphs 4 to 11, inclusive, in an Appendix to this opinion, the first three paragraphs being purely formal. In his affidavit Weinstock set forth in considerable detail facts with reference to the May Day holiday in New York City. He said he had personal knowledge of the manner in which the celebration was conducted from 1935 to and including 1953. He said that in about March of each year, except for the war years, interested individuals would call a meeting for the purpose of organizing a committee to conduct the celebration. This meeting adopted a name for the committee, elected officers, and the celebration was duly held. Shortly thereafter, Weinstock said, a meeting of those who had participated occurred, at which a report of the committee's activities and a final financial report were made and the committee was dissolved. Thus, he said, the committee was organized each year, functioned for approximately six weeks, and then was dissolved.

Weinstock said that during the years 1935 to 1953 the names of the committee had varied, as had the identities of the individuals who called the meetings and constituted the committee. He said that "United May Day Committee", "United Front May Day Committee", and "United Labor and Peoples' Committee for May Day" were among the names used for the committee and that the last had been the name by which the committee had been known from 1949 through 1953.

Weinstock then described in considerable detail the organization of the committee for 1953 and the manner in which the celebration on May Day of that year had been conducted. He said he had been administrative secretary for that committee. He said that on May 5, 1953, the committee held its final meeting and was dissolved and that at a meeting, held May 11th, of the endorsers of and participants in the celebration the final reports were approved.

In the fourth paragraph of the affidavit Weinstock included the sentence, "There has been no committee or organization known as or having the name United May Day Committee since May, 1948." In the indictment upon which he was convicted it was alleged this state-

1. Sec. 13(a), Internal Security Act of 1950, 64 Stat. 998, 50 U.S.C.A. § 792(a).

ment was known by him to be false, in that there was in the years 1950, 1951, 1952 and 1953 a committee known as the United May Day Committee.

The situation presented by the Attorney General's petition, the motion to quash, and the affidavit is perfectly clear. The Attorney General claimed that there was on May 6, 1953, and had been since about 1946, an organization known by various names, being in 1953 known as the United May Day Committee. Weinstock took the position that there had been since 1935, except for the war years, a committee annually organized and dissolved; that there had been such a committee in 1953 but that it had dissolved by its own action on May 5, 1953. He said that in prior years the committee had been named "United May Day Committee" but that in the years 1949–1953 it was called "United Labor and Peoples' Committee for May Day". His point, clearly and unequivocally presented, was that on May 6, 1953, the committee was not in existence. He specifically asserted the committee was not in existence under any name. The Attorney General on the contrary asserted the existence of the committee.

 The crime for which Weinstock was indicted is described in Section 1001, Title 18, of the United States Code.[2] That section reads as follows:

"Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

The first clause of the foregoing statute requires that the statement of the accused be false as to "a material fact", and we held in Freidus v. United States,[3] in respect to the whole section, that "this highly penal statute must be construed as requiring a material falsification."

The precise crux of the controversy is whether the statement "There has been no committee or organization known as or having the name United May Day Committee since May, 1948" was material to an issue posed either by the motion to quash or by the petition.

 "Material" when used in respect to evidence is often confused with "relevant", but the two terms have wholly different meanings. To be "relevant" means to relate to the issue. To be "material" means to have probative weight, i. e., reasonably likely to influence the tribunal in making a determination required to be made. A statement may be relevant but not material. Professor Wigmore depicts with some acerbity the difference between relevancy and materiality, "the inaccuracy of our usage" of the terms, and "the harmfulness of this inveterate error".[4] Materiality, he maintains, is a matter of substantive law and does not involve the law of evidence. He does not include "materiality" in the topics treated in his volumes on Evidence.

 The term "material" is used in many fields of law; for example, insurance law, bankruptcy, agency, motions for new trial upon the ground of newly discovered evidence, and in respect to perjury. In respect to materiality in perjury Blackstone said, " * * * for if it only be in some trifling collateral circumstance, to which no regard is paid, it is not penal.[5] The meaning of the word appears to be consistent in these various fields. The test is whether the false statement has a natural tendency to influence, or was capable of influencing, the decision of the tribunal in mak-

---

2. 62 Stat. 749 (1948).

3. 96 U.S.App.D.C. 133, 223 F.2d 598, 601 (1955).

4. 1 Wigmore, Evidence § 2 (3d ed. 1940).

5. 4 Bl.Comm. * 137.

ing a determination required to be made.[6]

Materiality must be judged by the facts and circumstances in the particular case. The color of an accused's hair may be totally immaterial in one case, but in other circumstances the color of his hair may be not only material but decisively so.[7]

■ Since the jury in the case at bar found the accused guilty we may assume it found the statement which is the basis of the indictment false. But we think that in the setting in which it was made the statement was not material. If the one sentence had stood alone it might well have been material. But in context, as merely part of the long affidavit, it was immaterial, wholly without weight or influence in any decision to be made by the Board.

The issue posed was whether the committee was a continuous organization or was an annual organization which existed for only six weeks each year, and, more particularly, whether the committee was in existence on May 6, 1953. We think no tribunal, in passing either upon the petition or upon the motion to quash, would have been influenced in the slightest by the name by which the committee was known, either on May 6, 1953, or at any other time, whether the name was United May Day Committee or United Labor and Peoples' Committee for May Day. The Attorney General had said in his petition that the committee had operated under various names; Weinstock agreed, also saying it had had various names. Surely the Board would have paid no attention whatsoever to the insignificant difference between the names under which the committee went. Had it found all the other facts in dispute to be as the Attorney General claimed them to be, surely it would have permitted as a mere formality an amendment to the title of the proceeding.

We cannot imagine that Weinstock, in supporting his motion to quash before the Board, would have rested any part of his case upon the minute difference in name; and we cannot conceive of the Attorney General, in opposing that motion or in supporting his petition, conceding the slightest fraction of his position if the Board had found a committee in existence on May 6, 1953, which was known as the United Labor and Peoples' Committee for May Day rather than the United May Day Committee. Thus it is apparent, both from the Attorney General's petition and from Weinstock's affidavit, that no question was intended as to the name of the committee.

6. *Accord:* Carroll v. United States, 16 F.2d 951 (2 Cir., 1927), certiorari denied 273 U.S. 763, 47 S.Ct. 477, 71 L.Ed. 880 (1927); Pyle v. United States, 81 U.S.App.D.C. 209, 156 F.2d 852 (D.C. Cir.1946); Robinson v. United States, 72 App.D.C. 254, 114 F.2d 475 (D.C.Cir. 1940); Blackmon v. United States, 108 F.2d 572 (5 Cir., 1940); Central & S. West Utilities Co. v. Securities & E. Comm., 78 U.S.App.D.C. 37, 136 F.2d 273 (D.C.Cir.1943); Freidus v. United States, supra; Woolley v. United States, 97 F.2d 258 (9 Cir., 1938), certiorari denied 305 U.S. 614, 59 S.Ct. 73, 83 L. Ed. 391 (1938); United States v. Hendrickson, 200 F.2d 137 (7 Cir., 1952), certiorari denied 345 U.S. 926, 73 S.Ct. 785, 97 L.Ed. 1357 (1953); Willoughby v. Jamison, 103 F.2d 821 (8 Cir., 1939), certiorari denied 308 U.S. 588, 60 S.Ct. 111, 84 L.Ed. 492 (1939); Patrick v. Cochise Hotels, 76 Ariz. 136, 259 P. 2d 569 (1953); State v. Fasano, 119 Conn. 455, 177 A. 376 (1935); Schloss v. Metropolitan Life Ins. Co., 177 Md. 191, 9 A.2d 244 (1939); New York Life Ins. Co. v. Kuhlenschmidt, 218 Ind. 404, 33 N.E.2d 340, 135 A.L.R. 397 (1941); People v. Kresel, 147 Misc. 241, 264 N.Y.S. 464 (1932); Knight v. Citizens Coach Co., 307 Ill.App. 251, 30 N.E.2d 180 (1940); Arkansas Power & Light Co. v. Mason, 191 Ark. 804, 87 S.W.2d 988 (1935); Sellers v. Harvey, 222 Ark. 804, 263 S.W.2d 86 (1954); 2 Wharton, Criminal Law §§ 1542–1548 (12th ed. 1932); 2 Bishop, Criminal Law § 1032 (9th ed. 1923). *Possibly. contra:* United States v. Slutzky, 79 F.2d 504 (3 Cir., 1935).

7. See discussion in 41 Am.Jur., Perjury § 13.

It may be argued from the Government's point of view that the permanence of the name (the use of the same name) throughout the whole of a long period tends to prove the committee was a permanent organization. So viewed, the sentence, it could be argued, would be material upon the issue posed by the motion to quash. But the Attorney General nowhere alleged that United May Day Committee was the permanent name of the organization. He did not seem to regard the permanence of the name as essential to his position. Of more importance, however, Weinstock himself said in his affidavit that the committee functioned under one name, with only variations as to the year, during the whole of the period from 1949 to 1953. So he admitted substantial identity of the name over a long period. The difference between Weinstock and the Government as to the name is not whether the same name was used over the years but merely what that name was. That difference was wholly immaterial to the issues posed. If it were agreed that the same name was used over a period of years, it is clear that whether the name used was one name or another is totally immaterial.

It may well be that the statement as to the current name of the committee would be admitted into evidence as relevant. An accused's name or a witness's name is admissible so far as relevancy is concerned. But we are not dealing with a question of bare relevancy.

The issue to which the false statement is material need not be the main issue; it may be a collateral issue. And it need not bear directly upon the issue but may merely augment or diminish the evidence upon some point. But it must have some weight in the process of reaching a decision. We think the sentence here involved had no such weight in the circumstances in which it was made, that is, in the context of the whole affidavit.

Of course, as we have indicated, if the statement here involved had been made by Weinstock without anything more being said by him, it might have been material. If he had said simply, "There has been no committee or organization known as or having the name United May Day Committee since May, 1948", and had stopped there, the statement could well be read as an unequivocal denial of the existence of any committee for many years. Such a statement could well have influenced the Board in passing upon the motion to quash or upon the petition. But Weinstock did not do that. He explained that there had been committees; that they had had various names; that there had been such a committee in existence the day before service of the petition; but he insisted that on the day of service no such committee was in existence under the name United May Day Committee or under any other name. It is this context which robs the lone sentence of any materiality—any possible influence upon the Board in reaching its decision. In context the sentence is a parenthetical observation upon what name the committee used from 1949 to 1953. What the name was, so long as it was the same over the period, was immaterial. What might have been material under other facts and circumstances or in another context was inconsequential and of no weight under the circumstances and in the context actually existing.

■ Materiality, the Supreme Court said in Sinclair v. United States,[8] is a question for the court. Upon that premise it held pertinency in prosecutions for refusal to answer questions to be a matter for the court to determine.[9] The same reasoning necessarily applies in respect to this false statement statute. The trial court should have directed a judgment of acquittal in the present

8. 279 U.S. 263, 298, 49 S.Ct. 268, 73 L.Ed. 692 (1929).

9. See also the opinions in this court in Bowers v. United States, 92 U.S.App.

D.C. 79, 202 F.2d 447 (1953), and Keeney v. United States, 94 U.S.App.D.C. 366, 218 F.2d 843 (1954).

case. Its judgment of conviction must therefore be

Reversed.

APPENDIX
SUBVERSIVE ACTIVITIES CONTROL BOARD

No. 111–53

Herbert Brownell, Jr., Attorney General of the United States, Petitioner

v.

United May Day Committee, Respondent.

AFFIDAVIT IN SUPPORT OF MOTION TO QUASH SERVICE OF THE PETITION

State of New York } ss.:
County of New York }

Louis Weinstock, being first duly sworn, deposes as follows:

\* \* \* \* \* \*

4. There has been no committee or organization known as or having the name United May Day Committee since May, 1948. The statement of the Attorney General in Section I of the petition that "from in or about 1946 up to and including the date of the filing of the petition and continuing thereafter, there has existed and operated in the United States an organization known by various names, which is now known as the United May Day Committee" is not true. If, as stated in the verification to the petition, this statement is based on investigative reports of the Federal Bureau of Investigation, that agency is misinformed as to the facts and has misled and misinformed the Attorney General.

5. The facts with reference to the celebration of the May Day holiday in New York City and the organization of committees to conduct such celebrations are set forth in the following paragraphs.

6. I am informed and believe that May Day has been celebrated as a labor and people's holiday in New York City substantially annually since 1890. The customary manner of celebrating this holiday has been by conducting a parade or open air meeting in the streets of New York in which numerous organizations and individuals have participated. I have personal knowledge of the manner in which the May Day celebration was organized and conducted annually from 1935 to and including 1953, with the exception of the years 1942 to 1945 inclusive, when no outdoor celebration was held by reason of the war.

7. Annually, in or about the month of March, from 1935 to 1953 (with the exception of the war years) individuals interested in celebrating May Day and acting on their own behalf or on behalf of trade unions or other organizations have issued a call addressed to all interested individuals and organizations in the city to attend a meeting for the purpose of organizing a committee to sponsor and conduct the May Day celebration for that year. Such meetings were held annually (except for the war years). Those present at the meeting formed a committee for the exclusive purpose of organizing and conducting the May Day celebration for that year. They adopted a name for the committee and elected officers and members of an administrative committee who were authorized to make all necessary arrangements for the celebration, including application to the city authorities in the name of the committee for permission to use the streets. Shortly following May Day of each year, after the committee had conducted the celebration and performed its only function, meetings of the officers and administrative committee and of representatives of organizations which had endorsed and participated in the celebration were held. At these meetings a report of the committee's activities and a final financial report were made and approved and the committee dissolved. Thus, in each year, a committee was organized in the manner and for the purpose described above, functioned for approximately six weeks, and then dis-

solved, ceasing to carry on any further functions or activities whatsoever.

8. During the years 1935–1953, the names of the committees which were organized annually in the manner above described, varied. The identity of the individuals who called the initial organizing meetings as well as the personnel of the officers and executive committees of these committees, likewise varied. "United May Day Committee", "United Front May Day Committee", and "United Labor and Peoples' Committee for May Day" were among the names used. In various years I have been elected to various offices in these committees.

9. The committees which sponsored the May Day celebrations and parades in the years 1949 to 1953, inclusive, were called the United Labor and Peoples' Committee for May Day of 1949, 1950, 1951, 1952 and 1953, respectively.

10. In March 1953 a group of individuals, including myself, organized themselves as a provisional committee for May Day, 1953 and issued a call for a meeting which was held at the St. Nicholas Sport Center, New York City, on April 4, 1953 for the purpose of organizing a committee to conduct the 1953 May Day celebration. The meeting voted to establish a committee with the name "United Labor and Peoples' Committee for May Day of 1953" for the sole and exclusive purpose of conducting the 1953 May Day celebration. The meeting elected an administrative committee, and officers consisting of three co-chairmen, an executive secretary and an administrative secretary. I was elected to the office of administrative secretary of the committee. The officers and administrative committee elected by the meeting proceeded to make all arrangements for the celebration, including the making of an application in the name of the committee, to the city authorities for a permit to conduct a parade on the streets of the city. The application was denied. However, a permit was issued to the committee for an open-air meeting in Union Square, a public square in New York City. A meeting was held pursuant to this permit and under the auspices of the committee on the afternoon of May 1, 1953, and was addressed by a number of speakers.

11. A meeting of the officers and members of the administrative committee of the United Labor and Peoples' Committee for May Day of 1953, having been duly called, was held on May 5, 1953. A report of the committee's activities and a final financial report were presented to and approved by the meeting. Thereupon, a resolution was adopted that, its function having been discharged, the United Labor and People's Committee for May Day of 1953 be dissolved. The meeting further fixed May 11, 1953 as the date of a meeting of those who had endorsed and participated in the celebration for the purpose of making a final report to them. Pursuant to the resolution referred to above, the committee ceased to function or exist after May 5, 1953. The meeting of the endorsers and participants in the celebration was held on May 11, 1953. A report of activities, a final financial report and a report of the action of the officers and executive committee dissolving the United Labor and People's Committee for May Day of 1953 were submitted to the meeting and approved.

[Signed] LOUIS WEINSTOCK
 Louis Weinstock

Subscribed and sworn to
before me this 3rd
day of June 1953
[Signed] MOSES C. WEINMAN
 Notary Public
 [SEAL]

DANAHER, Circuit Judge (dissenting).

Count I so far as is presently relevant charged that:

"The said false and fraudulent material statement contained in the aforementioned affidavit was that there has been no committee or organization *known as* United May Day Committee since May, 1948.

"The said statement was and was then and there known by defendant to be, false and fraudulent, in that in the years [in question] there was a committee and organization *known as* United May Day Committee." (Emphasis supplied.)

Count II differed importantly only in its reference to a "committee and organization *having the name* United May Day Committee." (Emphasis supplied.) The jury found the appellant guilty on the first count and not guilty on the second.

The trial judge carefully instructed the jury as to the difference between an organization which was "known as" United May Day Committee and one "having the name" United May Day Committee. He said, in part: "What is meant by 'known as', but in I think quite simple language, is this: Was it a matter of common knowledge? Was it commonly called United May Day Committee; was it generally known, not by a handful of people, but by many people. If it was known by many people as United May Day Committee, then it was an organization which was known as United May Day Committee." Reference also was made to the testimony that business firms, members of the "Committee" and Mr. Weinstock himself referred to the organization or group as United May Day Committee. The trial judge continued: "If you find, beyond a reasonable doubt, that this group, this organization, this unincorporated group, was known as and used itself the term or title 'United May Day Committee' then you . . . move to a second question, which is equally essential and which also must be proved beyond a reasonable doubt: Did Mr. Weinstock know that it was generally known as the United May Day Committee?" With admirable care, the trial judge instructed upon each and every properly applicable aspect of the jury's problem, but for present purposes we need refer but briefly to one other portion of the charge:

"['The Attorney General', Mr. Sacher said,] served Mr. Weinstock with a copy of his petition, which had the effect of informing him that this United May Day Committee, as the Attorney General called it, was to be cited before the Board for such action as the Board might take, if any, with respect to it. And he served Mr. Weinstock, on the theory that Mr. Weinstock was a leading member of it, or officer, or what not.

"Mr. Weinstock received that; and through his lawyer, and also directly himself—which is the gravamen of the allegation made here— he made an affidavit, [the one here involved] which his lawyer submitted to the . . . Board. . . .

"He made his affidavit on or about June 8, 1953. And he moved, through his lawyer, to quash the service upon him, which would have had the effect, temporarily at least, of dismissing the case lodged with the Board against what was known as the United May Day Committee." (J.A. 18.)

The jury was told that the statement "be it true or false—which is for you to say—the statement made by the defendant here was material."

Examination of the affidavit appearing in the appendix to the majority opinion will reveal that Weinstock swore that "There has been no committee or organization known as . . . United May Day Committee since May 1948" and he further swore to be untrue a statement in the Attorney General's petition that " 'there has existed and operated in the United States an organization known by various names, which is now known as the United May Day Committee.' " Such statements were comprehended within the first count, as above set forth. The evidence disclosed that the "Committee" not only identified itself as "United May Day Committee" for various business purposes, but under that name its telephone was listed, pursuant to a contract in the appellant's name for a telephone located in his office. Appellant was shown himself to have addressed various meetings "in the name

of the United May Day Committee" and to have been introduced as "the fighting Secretary of the United May Day Committee, Louis Weinstock."

After the Attorney General's petition had been served upon appellant, the latter filed with the Subversive Activities Control Board and served upon the Attorney General a motion to quash the petition reading in part:

"Louis Weinstock, the person to whom the petition was delivered, moves to quash the service thereof on the following grounds:

"1. Service of the petition was not made upon the Respondent (United May Day Committee), as required by the (Internal Security) Act and the (Board's) Regulations.

"2. The movant is not an officer of Respondent.

"3. There is no Respondent upon which service can be made or against which the relief prayed for in the petition can be granted for the reason that the United May Day Committee is not in existence, either under that name or any other name, and was not in existence on the date of the service of the petition on movant.

"Movant submits the annexed affidavit [1] in support of the foregoing motion."

It is true that the affidavit speciously sets forth purported facts to describe what appellant's counsel called the "amorphous" character of the unincorporated group, but the nature of the organization, whatever it was, was a proper subject for inquiry by the Board. The whole purpose of the motion to quash and the supporting affidavit was to induce the Board, in reliance upon the affidavit, to quash the service and to bring about dismissal of the proceedings. Appellant asked and expected the Board to rely upon his sworn statements. Had the Board accepted and relied upon the Weinstock affidavit, his motion to quash would have been granted. Appellant's whole challenge to the proceedings before the Board as well as to the prosecution of himself depends upon his insistence that these various short-lived committees were not "known as" the "United May Day Committee." Appellant's statements became infused with materiality because he made them material.

Another, but not entirely unrelated, ground predicates the correctness of the ruling by the trial judge. The relief sought by the Attorney General from the Board did not depend upon whether the Committee or each of several committees annually came into being for a week or two or more, only then to be dissolved. European May Day demonstrations have been notorious for years, and their importation into New York (as well as other cities in the United States) for the exploitation of Communist aims, the method of their organization, the means taken to promote them, the sources of their finances and comparable fields of inquiry lay properly within the Board's jurisdiction. In United States v. Dennis, 2 Cir., 1950, 183 F.2d 201, was developed a record which was found by the Supreme Court, Dennis v. United States, 1951, 341 U.S. 494, 498, 71 S.Ct. 857, 861, 95 L.Ed. 1137, to support the broad conclusion ". . . that the Communist Party is a highly disciplined organization, adept at infiltration into strategic positions, *use of aliases, and double-meaning language* . . .." (Emphasis supplied.) Weinstock's tactics as revealed by his "false, fictitious or fraudulent statements or representations," within the language of the statute, were designed to pervert the function of the Board.[2] The first

---

1. See appendix to majority opinion.

2. His "tactics" are not under fire, to be sure, whether obstructionist and frustrating or not, but it is not without significance that he swore that the "Committee" went out of existence *the very day before* process was served on the appellant. As to the pattern of such tactics by counsel in not unrelated circumstances, see United States v. Sacher, 2 Cir., 1950, 182 F.2d 416, 423–425, affirmed, 1952, 343 U.S. 1, 72 S.Ct. 451, 96 L.Ed. 717.

count of the indictment charged that: "The said false and fraudulent material statement contained in the aforementioned affidavit was that there has been no committee or organization known as United May Day Committee since May, 1948." The jury agreed, indeed it could have come to no other conclusion than that Weinstock's statement was false, fictitious or fraudulent. The first and chief ground, *supra*, upon which appellant in his motion sought to quash the petition, *vis.*: "that service was not made upon the Respondent" (United May Day Committee), when coupled with the supporting affidavit, false in the particulars mentioned, had no other purpose than to cause the Board to take action in reliance upon it. Construing comparable language to that found in the statute applicable here, the Court said:

> "The amendment indicated the congressional intent to protect the authorized functions of governmental departments and agencies from the perversion which might result from the deceptive practices described. We see no reason why this apparent intention should be frustrated by construction." United States v. Gilliland, 1941, 312 U.S. 86, 93, 61 S.Ct. 518, 522, 85 L.Ed. 598.

Thus, the Weinstock affidavit in the particulars previously considered and his motion to quash constituted an abuse and a perversion of the processes of the Board. That appellant's false statements can be deemed anything but material under the circumstances seems to me beyond acceptation.

Finally, even the "amorphous" character of the Committee was in issue, both as to its status as an entity by whatever name known, and at the time when service was accomplished. Every possible effort was made as shown on this record to persuade the Board to accept as fact the various statements appearing in the affidavit. It seems to me quite inconsistent to say that the very statements which can convince the majority and thus influence *its* decision could

have had no such effect upon the Board. The fact that the Board rejected them goes to the question of perspicacity rather than materiality, I respectfully suggest.

I believe the trial judge was correct and that the judgment of conviction should be affirmed.