### FRASER v. UNITED STATES.

#### No. 9679.

Circuit Court of Appeals, Sixth Circuit.

Oct. 10, 1944.

Writ of Certiorari Denied Feb. 5, 1945.

See 65 S.Ct. 586.

146

See also 145 F.2d 139.

W. H. Fisher, W. C. Rodgers, and Wils Davis, all of Memphis, Tenn., for appellant.

Thomas C. Farnsworth, of Memphis, Tenn. (William McClanahan, R. G. Draper, and Thomas C. Farnsworth, all of Memphis, Tenn., on the brief), for appellee.

Before HICKS, SIMONS, and Mc-ALLISTER, Circuit Judges.

HICKS, Circuit Judge.

Appellant was charged with perjury, in violation of Sec. 125 of the Criminal Code, 18 U.S.C.A. § 231. The indictment contained four counts, and appellant was convicted upon the first, third and fourth counts and acquitted upon the second. The court imposed a sentence of five years imprisonment upon each count, the sentences to run concurrently. A fine of $2000 upon each count was also imposed.

The indictment grew out of statements made by appellant under oath in the course of a civil action brought by P. M. Barton and others against him and his associates, d.b.a. G. H. Britton Cotton Company, over the marketing of cotton. The civil suit was brought in the District Court for the Western District of Tennessee, the court from which this appeal was taken.

Count 1 charged that while appellant was a witness under oath on the trial of the civil case, and in response to questions by the presiding judge, as to how he had paid out or disbursed certain moneys, that had come into his hands in connection with the cotton marketing transaction, he testified to the following material matters which were not true and which he did not believe to be true:

"A. Well, I paid my sister a note that I owed her for several years.

"The Court: What is her name? A. Mrs. Jackson.

"The Court: Where does she live? A. Tuscaloosa, Alabama.

"The Court: How much did you pay her? A. Three thousand dollars.

"The Court: Proceeds of the Barton cotton? A. No sir; Leftwich cotton."

And that upon being interrogated further, in connection with the same transaction, appellant, in response to questions directed to him by an attorney for the plaintiffs, testified as follows:

"Q. Mr. Fraser, how did you send this money to your sister? What was the medium by which you transported it to her? A. Cash.

"Q. You mean you put it in an envelope? A. Yes, sir.

"Q. How did you get it down to her? A. She has a young son, and he came up and got it.

"Q. What is his name? A. E. S. Jackson, Jr."

Further: That in the same proceeding and in connection with the same transaction in response to other questions propounded to him by the Judge, appellant stated as follows:

"The Court: I would like to know when it was that you paid your sister this $3,-000.00. Can you tell me about the time that was? A. I would say in July.

"The Court: July of last year? A. Yes, sir.

"The Court: How do you fix that date? A. I am just going by my recollection."

Further: That in the same proceeding and in connection with the same transaction in response to questions directed to him by an Assistant U. S. Attorney, appellant testified as follows:

"Q. Mr. Fraser, what was the name and address of that sister to whom you paid this $3,000.00? A. Mrs. E. S. Jackson.

"Q. And her address? A. Tuscaloosa, Alabama; 816 12th Street.

"Q. Tuscaloosa, Alabama? A. Yes, sir.

"Q. And you paid her that money about when? A. Last summer.

"Q. What month? A. I think in July.

"Q. You paid her $3,000.00 in cash? A. Yes, sir.

"Q. Sent it to her in cash, by her son? A. Yes, sir.

"Q. Some time about July, 1942? A. Yes, sir."

The indictment averred that all of these statements made by appellant were false and untrue and known by him to be false and untrue and that he did not believe them to be true and that they were material matters; that the facts were, that appellant had not paid to Mrs. E. S. Jackson the sum of $3000 cash, or otherwise, and had not transmitted said amount of money to her by her said son, E. S. Jackson, Jr., but had concealed or disposed of same and that said false and untrue statements were material to the issue in controversy in that the whereabouts and disposition of the proceeds from the sale of the cotton in controversy in said litigation by appellant were a proper subject of inquiry raised by the intervening complaint of the United States and the pleadings.

Count 3 charged that on the same day in the same civil action, in response to questions as to the disposition of moneys in the same transaction, appellant testified to the following material matters which were not true and which he did not believe to be true:

"Q. Mr. Fraser, did you pay off the balance of the indebtedness on your home in 1942? A. I will answer you this way—

"Q. Just answer my question. A. Did we pay it off in 1942?

"Q. Did you pay off the balance of the indebtedness on your home in 1942? A. I don't know. I made a trade, and I think these people reduced the indebtedness to around $2500.00 or $2600.00. That was made in 1940 or 1941.

"Q. Are you sure it wasn't made in 1942? A. No; 1940 or 1941.

"Q. Whom did you make that trade with? A. Brigance. He was sick, and they didn't have any money.

"Q. Where is he? A. He is dead.

"Q. Who have you been paying the money to? A. Mrs. Brigance.

"Q. You haven't paid anything since 1940 or 1941? A. I haven't; no."

The indictment avers that the testimony by appellant that he had not paid anything on his mortgage since 1940 or 1941 was false and untrue and was material; that appellant did not believe this testimony to be true and that appellant had in fact on or about September 28, 1942, paid off the mortgage indebtedness existing against his home by using the proceeds or a portion thereof which he had received from the sale of cotton involved in the litigation.

Count 4 charged, that on December 15, 1942, while appellant was a witness by deposition and in response to questions directed to him by the Assistant United States Attorney, he testified on oath touching a material matter, to wit, as to how much money he had received from the sale of cotton and therein gave material evidence which was not true and which he did not believe to be true, to wit:

"Q. Tell me, as nearly as you can, how much money you got for the cotton you sold that is involved in this law suit? Give us your best estimate in that connection, Mr. Fraser. A. I got by agreement with Harris $20,000.00 from the Union Planters Bank, and $7,000.00 from the Bank of Commerce. There were receipts for 291 bales of cotton, and I imagine—I don't know the facts—that there were 50 to 60 bales of the Barton cotton in that number. The other cotton wasn't Barton's.

"Q. You mean, then, that all of the money you have got out of the Barton cotton that is involved in this particular law suit is $27,000.00 plus the price of 60 bales of cotton? A. Yes, sir; as relates to Barton.

"Q. Suppose there were 60 bales of cotton, what would that be worth? A. I would say $3,000.00.

"Q. $3,000.00. A. Yes, making about $30,000.00."

That these statements were false and untrue and known by appellant to be false and untrue and were material to the matter in litigation; that the facts were, that appellant had received proceeds from the sale of cotton or from the proceeds derived therefrom an amount greatly in excess of $30,000, to wit, the additional sum of approximately $17,000; and that the matter in issue was a proper subject of inquiry raised by the pleadings.

We undertake a general resume of the substance of the litigation out of which the indictment sprang.

The complaint therein alleged that defendants (appellant and others) had contracted to sell for the plaintiffs, Barton and others, some 1859 bales of cotton which were pledged to the Mid South Cotton Growers Association to secure a loan in the sum of $62,871.59; that defendants took possession of the cotton and sold it in May and June 1942; that it had an approximate market value of $130,000; that the lien was discharged, leaving a balance to be accounted for of approximately $67,-128.41 of which $57,928.50 should have been held in escrow, for the payment of a Government tax. It was alleged that the tax was not paid, that the amount thereof was not placed in escrow as agreed upon, and that the balance in excess of the tax, or approximately $9,200, was not paid to the plaintiffs. Plaintiffs demanded an accounting to be evidenced by the original books, records, invoices, etc., including the names of the parties to whom the funds were paid, the prices received and the disposition of the money, etc.

An amended complaint alleged that appellant had received and was fraudulently concealing the proceeds of the cotton in certain lock boxes in banks and that he was insolvent and a temporary injunction was sought to prohibit the removal of the contents of the boxes.

The Government intervened, making all parties defendants and set up its claim for the tax imposed upon the growing of cotton in excess of allotted acreages. It was alleged that appellant had received and was concealing the proceeds of the cotton in certain banks and a judgment

was sought against all parties for the amount of the tax and an injunction was prayed against appellant and his agents and the banks from removing or disposing of the funds found in the lock boxes.

An injunction was issued, forbidding appellant and his wife from entering the boxes and from disposing of or concealing any of the proceeds from the sale of the 1859 bales of cotton. Upon application of the Government, the court entered an order allowing appellant's deposition to be taken, pursuant to Rule 26 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, and a subpoena duces tecum was issued, directing appellant to bring in all documents, papers, contracts, etc., covering the sale and disposition of the cotton.

Appellant was examined and the examination was devoted primarily to the location of the money received by defendants and particularly by appellant from the sale of the cotton. Count 4 of the indictment was based upon testimony given by appellant in the course of this examination.

Subsequently, appellant filed his answer to the intervention or cross-complaint of the Government, in which he challenged the constitutionality of the tax and alleged that in any event he was not liable therefor since Barton and the Three Way Land Company from whom he purchased the cotton, had assumed the tax, and that he was under no obligation to collect, segregate or pay over the tax or any penalty thereon. He further denied that he had concealed or fraudulently removed or disposed of any of the proceeds of the cotton. He denied that he had any property upon which the cross-complaint had any lien or in which it had any interest.

In answer to the original civil complaint and amendment thereto, appellant denied that plaintiffs therein had any interest in the cotton; denied that he agreed to put the proceeds of the cotton in escrow to await decision on the validity of the tax; admitted that he had paid no tax

and denied responsibility therefor. He averred that Barton and his associates sold the cotton to himself and his co-defendants outright at prices ranging from $6 to $9 per bale for the equity of plaintiffs therein, and he further averred that he had repeatedly offered the stipulated sum to plaintiffs which they had refused to receive.

G. H. Britton, an associate of appellant in the cotton transaction, and a defendant in the civil action, alleged in his answer that it was understood that the Britton Company was the buyer of the cotton and denied liability for the penalty, alleging that same was to be borne by Barton and associates and that defendants agreed to pay them only $9 per bale as representing the Barton equity in the cotton.

The statute under which appellant was indicted is printed in the margin.[1]

Appellant insists that the testimony made the basis of the indictment was immaterial to the issues in the civil cause. The test of materiality is fully stated in the recent case of Blackmon v. United States, 5 Cir., 108 F.2d 572, 573. There the court said that the test was "whether the false testimony was capable of influencing the tribunal on the issue before it." Again, that "it is sufficient if it is material to any proper matter of inquiry." In United States v. Slutzky, 3 Cir., 79 F.2d 504, 506, the court said that "materiality refers to testimony that will legally evidence the propositions to be proved." See also Goins v. United States, 4 Cir., 99 F.2d 147, 149; Ulmer v. United States, 6 Cir., 219 F. 641.

The "propositions to be (proved)" are disclosed in the pleadings in the civil action. The main issue was, whether the sales agreement between Barton and his associates and the Fraser-Britton associates was a contract for the sale of the cotton by the defendants as Barton's agents, or whether it was an outright sale to them. Appellant's testimony as to his disposition of the money relates to the nature of the

[1] "Section 231. (Criminal Code, section 125). Perjury. Whoever, having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, shall willfully and contrary to such oath state or subscribe any material matter which he does not believe to be true, is guilty of perjury, and shall be fined not more than $2,000 and imprisoned not more than five years. (R.S. § 5392; Mar. 4, 1909, c. 321, § 125, 35 Stat. 1111)."

contract. If he treated the money received as his own, that fact would have some tendency to support his understanding of the contract. We think that the testimony, alleged in counts 1 and 3 to have been given by appellant, was material within the meaning of the statute and the law as above indicated, and that it was not error to so hold.

■ The main question here is, whether appellant's motion for a directed verdict should have been granted. In the testimony upon which the first count of the indictment was based, appellant stated that he had paid $3000.00 to his sister in Tuscaloosa, Ala., in July 1942, and that her son had come up and gotten the money. This sister testified in response to the question, "whether in July of 1942 you received $3000 from Mr. William Fraser in payment of a debt to you?" and answered "No sir." She admitted he owed her money and that she had sold him her automobile for which he had never paid. Her son also testified and denied that he came to Memphis in the summer of 1942 and stated that his only visit to Memphis was in the spring of 1940. This testimony is supported by other evidence, to wit, that on the afternoon of the day on which appellant was a witness he telephoned his sister and warned her that FBI men would be around to see her and that on the same day she received a wire from appellant's wife asking her to telephone her at Memphis and to "talk to no one but me."

In explanation of his conduct in the afternoon appellant testified that he was fond of his sister, knew that she had been ill, and that she would be worried by a visit from the FBI men and wanted to reassure her; that in August 1942 he had an operation in the hospital, was sent home and later was sent to another hospital around October 1st for another ten days. There was additional testimony by his wife and a nurse that he was very ill; that appellant thought he was going to die and asked his wife to send the money to his sister and that she advised him that she had done so, and that at the time he testified in the civil suit he did not know that it had not been sent.

The testimony upon which count 3 was based related to the payment by appellant in 1942 of the mortgage on his house. He testified explicitly that he had paid nothing on the house since 1940 or 1941.

It was stipulated that the mortgage was released by a marginal entry on the record on September 28, 1942, by one Tindell as its true and lawful holder. The Government offered the testimony of J. D. Stovall, Assistant Cashier of the National Bank of Commerce, to the effect that on September 28, 1942 appellant bought a cashier's check for $3175.55 payable to the First National Bank of Memphis. W. C. Pegg, Auditor of the Bank, testified that a Cashier's check for the same amount was on the same date issued to Tindell, and that Tindell's deposit slip described the item as "Fraser." On cross-examination appellant was asked: "Did you issue a check on your account of the National Bank of Commerce on the 28th of September 1942 on which the Cashier's check was issued and which Cashier's check in the sum of $3175.55 was turned over to the account of C. A. Tindell in satisfaction of the balance due on the home out there where you live?" Appellant's answer was: "I saw the check and I know it is true that I did give a check. At the time I gave the check I had no knowledge of it." His examination continued as follows:

"Q. Had what? A. No knowledge.

"Q. You mean you were unconscious? A. I don't know whether I was or not but I went to the hospital two days after, bleeding badly, and I don't recall that check, but it is a fact that I did pay off the mortgage at that time."

Here again, as in count 1, appellant attempted to explain his testimony by testifying that he was ill and did not remember. If it was true that he did not remember, then the element of wilful false swearing embodied in the statute would be absent, but as applicable both to counts 1 and 3, there was substantial evidence upon this feature of wilfulness as well as upon that of falsity, which would require the submission of the case to the jury under appropriate instructions. The complaint touching the denial of requested instructions will be hereinafter considered.

As to count 4, appellant testified in a deposition prior to the hearing in the civil action, and prior to the filing of his own pleadings, in response to a request by the Government for leave to take his deposition and for the production of documents, pursuant to Rule 26 of the Rules of Civil Procedure. We do not think that we are required to determine whether the pro-

cedure followed in taking the deposition was a nullity, as claimed by appellant. The crucial question is, whether the evidence adduced by the Government in support of count 4 was sufficient. The purpose of taking the deposition was to ascertain how much money appellant had netted out of the Barton cotton. Appellant's estimate was $30,000, made up of $20,000 in Union Planters Bank, $7000 from the Bank of Commerce, and $3000 for fifty or sixty bales of Barton cotton included in the sale of 291 bales of cotton to Leftwich.

■ Under the decisions relating to perjury, "an uncorroborated confession or evidence of perjury, given by one witness only, does not as a matter of law establish beyond a reasonable doubt the commission of a crime * * *." Warszower v. United States, 312 U.S. 342, 347, 61 S.Ct. 603, 606, 85 L.Ed. 876. In Hammer v. United States, 271 U.S. 620, 626, 46 S.Ct. 603, 604, 70 L.Ed. 1118, the court said:

"The general rule in prosecutions for perjury is that the uncorroborated oath of one witness is not enough to establish the falsity of the testimony of the accused set forth in the indictment as perjury. The application of that rule in federal and state courts is well nigh universal."

In Goins v. United States, supra, 99 F.2d at page 148, the court said:

"On the second point it may be assumed that the requested instruction embodied correctly the rule of law as applied in the federal courts, where it has been uniformly held that the uncorroborated oath of one witness is not enough to establish the falsity of the oath as to which perjury is charged, and that, except where the falsity of such oath is indisputably established, as by documentary evidence, it must be shown by the testimony of at least two witnesses, or by the testimony of a witness corroborated by circumstances proved by independent testimony."

The court then cited a number of authorities supporting the proposition.

Appellant does not, in respect to the matters in question in count 4, admit that his statement was false. Actually, he reiterated that the statement that he received about $30,000 from the Barton cotton was correct. His income tax return for 1942 indicated that he received that year $47,412.33 but he explained, that the difference between that figure and the $30,-000, which he admitted he received from the Barton cotton, was proceeds of another transaction not involving Barton cotton. This was the Leftwich transaction. He testified that 231 of the 291 bales sold to Leftwich were bought by Britton Cotton Company through himself from Ellis & Edwards. He admitted that these bales were converted and his income tax return reflects that he took the proceeds therefrom but insisted that it was an independent transaction. Appellant insists "it wasn't Barton cotton;" and the statement, although misleading, was literally true and the Government's evidence does not place the transaction in a different light.

Britton, appellant's partner, testified that the gross amount withdrawn by appellant from the company on account of the Barton transaction was $34,841.91. On cross-examination he testified that these figures "were given to" (him) "by the Auditor" and were the result of the auditor's work on the company's books. Britton himself did not assist in getting up the totals but simply took the auditor's word for them. The court ruled that the figures taken from the audit were incompetent and the books were not in evidence.

MacKnight, the auditor, testified that he made the audit from the cash journal, bank statements and other documents, and that from these records appellant had received $34,841.91 directly from the Barton cotton but on cross-examination he admitted charging appellant with several items which were not originally in the cotton account. He made these changes "because Mr. Britton said so."

■ It is quite evident that since appellant insisted that his statement upon which count 4 was based was correct, and since the court ruled that Britton's statements were incompetent, appellant was entitled to a directed verdict upon count 4 because the Government failed to introduce two witnesses or one witness and corroborative circumstances in support of count 4.

■ Appellant complains that the court erred in refusing to charge requested instructions Nos. 1 and 2. We think that the substance of special request No. 1 was incorporated in the general charge. However, the second request was not given, to wit:

152

"You are instructed that you cannot convict the defendant on the uncorroborated statement of any one witness. A conviction of perjury must be based upon testimony of two or more witnesses, or if only by one witness, then such witness must be corroborated by other substantial evidence."

The court's response was:

"On this Special Request No. 2 . . . I don't think any such rule prevails today. It used to be, under the state statutes, that such requirement did prevail, but I think it would not be proper to give that charge."

We think that this ruling was erroneous. The request stated the law as set forth in the cases above cited and it had no counterpart in the original charge. Appellant was entitled to have it submitted to the jury and the refusal to do so was presumptively erroneous. Fillippon v. Albion Vein Slate Co., 250 U.S. 76, 39 S.Ct. 435, 63 L.Ed. 853.

The Government insists that the error was completely negatived by the record, which demonstrates that appellant was clearly and convincingly shown to be guilty and that the error was therefore harmless. We are unable to accept this view as to count 1. We have examined the record in its entirety and are unable to say as a matter of law that the denial of the request did not nor could not materially contribute to the verdict rendered as to this count.

As to count 3, the evidence consisted of: the stipulation that the mortgage had in fact been paid, Fraser's admission that he did pay it off and corroborative testimony of the two bankers with supporting documents, tending to show that a checking transaction between Fraser and the lien holder for the amount of the mortgage had cleared through the banks on the day stated. We think the evidence as to this count, consisting as it did of Fraser's admission or confession and the corroborative testimony of the bankers, was such that it was unaffected by the failure of the court to give special request No. 2 [Pawley v. United States, 9 Cir., 47 F.2d 1024], and the judgment as to this count is affirmed.

The case is remanded for correction of judgment in accordance herewith.