294

Everett E. Cook et al., Appellants, v. Charles R. Kirgan, Appellee.

Term No. 47M16.

Opinion filed September 15, 1947.
Rehearing denied October 28, 1947. Released for publication October 30, 1947.

WILL M. ALBERT, of Vandalia, REDMON, SMITH & HULL and GUS T. GREANIAS, all of Decatur, for appellants.

WHAM & WHAM, of Centralia, ROBERT G. BURNSIDE, of Vandalia, and EKERN, MEYERS & MATTHIAS, of Chicago, for appellee; DONALD L. THOMPSON, of Chicago, CHARLES WHAM, of Centralia and ROBERT G. BURNSIDE, of Vandalia, of counsel.

MR. PRESIDING JUSTICE BARTLEY delivered the opinion of the court.

This was an action under the Liquor Control Act (Ill. Rev. Stat. 1945, ch. 43, par. 135 [Jones Ill. Stats. Ann. 68.042]) by the plaintiff, Everett E. Cook and his four minor daughters, against the defendant who is a tavernkeeper, to recover damages alleged to have been sustained by them to their means of support in consequence of the defendant giving or selling intoxicating liquor to the deceased, Kenneth W. Cook, who was the son of the plaintiff Everett E. Cook and the brother of the minor plaintiffs and who was killed by a policeman in a fight. At the conclusion of plaintiffs' evidence, the circuit court of Fayette county allowed a motion for a directed verdict in favor of the defendant and entered judgment in bar of the action.

In order for a plaintiff to recover in such cases, it is necessary that the plaintiff prove that the defendant sold or gave intoxicating liquor to the deceased; that such intoxicating liquor served to the deceased contributed in some degree, no matter how slight, to his intoxication; that the deceased was killed in conse-

quence of such intoxication with resulting injury to plaintiffs' means of support.

It is not denied that the defendant or his agent sold or gave intoxicating liquor to the deceased. It is contended, however, that there was not sufficient evidence in the record to submit to the jury the question as to whether the deceased was intoxicated or whether he was killed in consequence of intoxication, with resulting injury to plaintiffs' means of support.

In considering the sufficiency of the evidence on a motion for a directed verdict, the court must look only to the evidence which is favorable to the party moved against. Contrary evidence is not considered and there is only for review the question whether there is fairly sufficient evidence, taken in its aspects most favorable to the plaintiff, together with all reasonable inferences arising therefrom, which tends to support the case charged in the complaint. (*Hunter v. Troup,* 315 Ill. 293, 296; *Walaite v. Chicago, R. I. & P. Ry. Co.,* 376 Ill. 59, 62; *Osborn v. Leuffgen,* 381 Ill. 295.)

In the case of *Osborn v. Leuffgen,* 381 Ill. 295, commencing on page 298, the court said; ''It is a matter of general knowledge that all alcoholic liquors are intoxicating in varying degrees. It is well known that the effect of alcohol upon all persons is not the same but may be widely different, and that an individual who has had only a slight amount to drink may in some instances be more dangerous than a person who shows signs of intoxication. The Supreme Court of Pennsylvania has said in the case of *Elkin v. Buschner,* 16 Atl. 102; ''Whenever a man is under the influence of liquor so as not to be entirely at himself, he is intoxicated. Although he can walk straight, attend to his business, and may not give any outward and visible signs to the casual observer that he is drunk, yet if he is under the influence of liquor so as not to be at himself, so as to be excited from it, and not to pos-

sess that clearness of intellect and that control of himself that he otherwise would have, he is intoxicated.' ''

In construing a statute identical with the one here insofar as the issues here involved, the Supreme Court in the case of *Schroder v. Crawford,* 94 Ill. 357, page 361 said: ''It was not the intention that the intoxicating liquor alone, of itself, exclusive of other agency, should do the whole injury. That would fall quite short of the measure of remedy intended to be given. The statute was designed for a practical end, to give a substantial remedy, and should be allowed to have effect according to its natural and obvious meaning.''

If intoxication is the effective cause of injury it is in consequence of the intoxication. (*Baker & Reddick v. Summers,* 201 Ill. 52, 57, 58.) Apropos of this, MR. JUSTICE CARTWRIGHT in the case just cited, commencing on page 57 said: ''The statutory liability does not rest alone upon the sale or gift of liquor, but also upon the intoxication resulting from such sale or gift, and the consequent injury. Defendants would not be liable because they sold liquor to Summers or because the jury might deem such sale the effective cause of the injury, but would be liable on account of the sale and intoxication resulting from such sale, if such intoxication was the effective cause of the injury.''

In order for one to recover damages for alleged injuries sustained, under paragraph 135 of the Liquor Control Act, it is not necessary that such person have a legal right to be supported by the person alleged to have been killed in consequence of intoxication. It may be sufficient that voluntary contribution for support was made. (*Gilmore v. Killion,* 281 Ill. 154.) MR. JUSTICE CARTER in that case, commencing on page 156, said: ''Counsel for appellants earnestly insist that in order for appellee to recover, her son being an adult, it was incumbent upon her to prove by a preponderance of the evidence that she was a resi-

dent of Illinois and to bring herself within the provisions of the Pauper act of this State, and that she must also show she had a legal right to be supported by her son; that the fact that he made voluntary contributions for her support would not be sufficient to entitle her to a recovery under the statute. Section 9 of the Dram-shop act, on which this verdict is founded, provides: 'Every husband, wife, child, parent, guardian, employer or other person, who shall be injured in person or property, or means of support, by any intoxicated person, or in consequence of the intoxication, habitual or otherwise, of any person, shall have a right of action in his or her own name, severally or jointly, against any person or persons who shall, by selling or giving intoxicating liquors, have caused the intoxication, in whole or in part, of such person or persons,' etc. (Hurd's Stat. 1916, p. 1083.) There is nothing in the wording of this statute that justifies the argument of counsel on any of these points. Under the reasoning of this court in *Danley v. Hibbard,* 222 Ill. 88, and *Nagle v. Keller,* 237 id. 431; it must be held that these arguments of counsel are without force.''

The evidence shows that the deceased, Kenneth W. Cook, who was twenty-two years of age, together with his brother Fred Cook and his two unmarried uncles, Lee Daughhetee and Dayton Daughhetee, left Martinsville, Illinois, on Friday morning, January 18, 1946, and went to Vandalia, Illinois, for the purpose of visiting old friends and celebrating the deceased's recent discharge from the army. On Saturday afternoon, January 19, the deceased and his companions had some beer in Vandalia and about 10:00 o'clock in the evening, the four of them went to the defendant's tavern located about four miles south of Vandalia, where they remained until the tavern's closing time, 12:00 o'clock. During this period they all, from time to time, were served and drank whisky and beer. The exact amount the deceased drank is not shown in the

record, though it is shown he had four drinks of whisky and some beer. There was evidence that he was "making an awful poor out at dancing" and that he was in high spirits and unsteady when he danced and that he was staggering around before he left the defendant's tavern.

There was evidence that the deceased and his companions left the tavern of the defendant about 12:00 o'clock and drove to a cafe in Vandalia. The two uncles and the deceased went into the cafe, Fred remaining outside. The two uncles sat at a table near the front window of the cafe. The deceased walked back to a table where a man and his wife were sitting with two friends, all of whom were unknown to the deceased. The deceased inquired of them "Did anybody call me Kenney?" The man at the table said "no." He then inquired twice: "Who called me skinny?" The wife of the man at the table said no one did and asked him to be a gentleman and go back to his own table. The deceased just stood there and she then inquired of him if he was going to be a "gentleman" or a "heel," and the deceased replied that he was going to be a "heel." At this point, the man started to get up and as he did the deceased started to fight and they both fell to the floor.

The evidence tends to show that there was in the cafe at the time, a policeman, not in uniform, and he attempted to break up the fight. The uncle Dayton Daughhetee thereupon joined in the affair and the policeman ordered him out of the door. He was taking him out of the door and at this point, the deceased attacked the policeman and struck him several blows. The policeman, with his gun out, ordered the deceased to stop but he kept coming toward him, whereupon the policeman fired one shot which hit the deceased, from which shot he afterwards died.

There was evidence to show that when the deceased was sober he was easy to get along with, and in general

was quiet and industrious, and that when he was drinking he was high strung and usually wanted to fight and was pretty violent.

There was evidence that the mother of the deceased is dead. The father, plaintiff Everett E. Cook, about three years ago was admitted to a Tuberculosis sanitarium and at times is required to lay off from work and rest. The plaintiffs, other than the father, are his four daughters, sisters of the deceased, all minors and all attending school with the exception of the baby who is four years old. At the time the deceased was in the army, he made an allotment of $37 per month to his mother which was used for the family's support and after her death, this allotment was made to the father of the deceased. There was evidence that before going to the army, the deceased worked for a period of about four months and contributed all of his earnings to the family except what he needed for clothes; and that whenever the family got low and needed money, he helped them out.

The weight of the evidence is not here before us. We consider the evidence only in its light most favorable to the plaintiffs. In applying this rule, together with the rules of law applicable, hereinbefore set out, to the evidence in the cause, we are of the opinion that there is sufficient evidence in the record to have submitted the issues involved to the jury.

The judgment of the circuit court of Fayette county is reversed and the cause is remanded for a new trial, with judgment for costs against the defendant.

*Reversed and remanded.*

CULBERTSON and SMITH, JJ., concur.