## UNITED STATES v. HENDERSON.

### No. 10088.

United States Court of Appeals,
Seventh Circuit.

Nov. 8, 1950.

Rehearing Denied Dec. 6, 1950.

William M. Giffin, Edward G. Pree, Springfield, Ill., for appellant.

Howard L. Doyle, U. S. Atty., Marks Alexander, Asst. U. S. Atty., Springfield, Ill., for appellee.

Before KERNER, FINNEGAN, and LINDLEY, Circuit Judges.

KERNER, Circuit Judge.

Defendant, Henderson, was convicted of subornation of perjury in violation of § 1622, Criminal Code, 18 U.S.C.A., in that he had knowingly suborned and procured one Betty Jane Barry to commit perjury. At the close of the Government's evidence, and at the close of all the evidence, defendant moved for a directed verdict in his favor; both motions were denied. The jury returned a verdict of guilty upon which the court rendered judgment, and from that judgment, defendant appeals.

The indictment alleged that on April 13, 1949, there came on for hearing in the United States District Court a certain cause in which, by indictment, Henderson was charged with violating the White Slave Traffic Act[1] in connection with the transportation of Betty Jane Barry in interstate commerce from St. Louis, Missouri, to Quincy, Illinois, for the purpose of prostitution. When the cause came on for trial, the United States attorney moved the court to nolle prosequi the indictment. He informed the court that Barry had repudiated her testimony which she had theretofore given under oath before a United States Commissioner in Chicago, Illinois. The indictment further alleged that on the hearing of the motion to nolle, it became a material matter for the court to determine whether the statement she had made before the United States Commissioner was true. Thereupon Barry was sworn and took her oath to speak the truth concerning the matters being inquired into by the court. She testified that her testimony before the Commissioner to the effect that Henderson had taken her from East St. Louis, Illinois, to St. Louis, Missouri, and there purchased two railroad tickets with the purpose and intent of transporting her from St. Louis to Quincy, Illinois, for the purpose of placing her in a house of prostitution, was not true, that it was false.

At the trial the evidence for the Government consisted of certain exhibits, the testimony of the clerk of the court and two agents of the FBI, the testimony of Betty Jane Barry, as well as that of eleven other witnesses. The defendant did not testify, but four witnesses testified in his behalf. The jury believed the Government's witnesses and brought in a verdict of guilty, thus establishing that Barry met defendant in the spring of 1944 at East St. Louis and went with him to a hotel, and that, with defendant's approval, she prostituted herself at numerous hotels and gave her earnings to defendant; that in August, 1944, she went to Quincy, and while there she sent to defendant at East St. Louis a Western Union money order for $15; that about August 19 she rejoined defendant at East St. Louis and thence they went together to St. Louis, Missouri, where de-

---

I. 1948 Revised Criminal Code, 18 U.S.C.A. §§ 2421–2424.

fendant purchased two tickets on the Chicago, Burlington & Quincy Railroad, and they then proceeded to Quincy, Illinois, and registered at the Quincy Hotel as husband and wife; that on August 20, while at Quincy, Barry accompanied one Thomas, whom she had picked up at a tavern, to a hotel at Quincy and there stole his wallet; she was arrested, and after conferring with defendant, and on his advice, she entered a plea of guilty and was sentenced for a term of six months; that on April 10, 1949, at Springfield, Illinois, just prior to the calling of the White Slave Traffic Act case, she met defendant who asked her not to testify against him, and suggested that she deny that defendant had accompanied her from East St. Louis to St. Louis, and then to Quincy, Illinois.

Defendant's main contention is that the evidence was insufficient to sustain the judgment. He makes the point that in order to substantiate the charge that perjury was committed by the alleged subornee, it was incumbent on the Government to prove that there was a violation of the White Slave Traffic Act.

██ It is true that Barry was the only witness who testified with reference to her transportation from St. Louis to Quincy. But, as already noted, there was evidence that defendant and Barry arrived at the Quincy Hotel at 4 o'clock a. m. and that he registered at the hotel as husband and wife. In addition the evidence disclosed that Barry and the defendant lived together during the summer of 1944 as husband and wife; that she was prostituting herself in a house of assignation operated by one Hannah Summers, and that she contributed to his support from her earnings. In this situation, it is not for us to make an independent valuation of the testimony. We will not weigh evidence; that function belongs to the jury. We think from all the evidence and circumstances here appearing, the jury was warranted in believing that defendant while at St. Louis purchased two railroad tickets and that Barry was then transported to Quincy for the purpose of prostitution.

Defendant's next contention is that in a prosecution for subornation of perjury, the actual perjury must be proven by two credible witnesses, or by one credible witness plus corroborating circumstances, and the corroboration must be on material issues of fact. He argues that the very nature of the crime necessitates the testimony of the confessed perjurer as the basic evidence for the prosecution, and in order to constitute the crime, there must be perjury, and unless the alleged subornee is corroborated on material matters by credible witnesses, the conviction cannot stand.

██ Concededly, the unsupported testimony of an alleged subornee cannot sustain a conviction for subornation of perjury, Hammer v. United States, 271 U.S. 620, 46 S.Ct. 603, 70 L.Ed. 1118, and Weiler v. United States, 323 U.S. 606, 65 S. Ct. 548, 89 L.Ed. 495, but a conviction will be sustained if the testimony of the subornee is corroborated by other circumstances proven in the case, United States v. Wood, 14 Pet. 430, 10 L.Ed. 527, for the reason as stated 271 U.S. at page 627, 46 S. Ct. at page 604, in the Hammer case: "Undoubtedly in some cases documents emanating from the accused and the attending circumstances may constitute better evidence of such falsity than any amount of oral testimony." Without again restating the facts as they relate to the instant contention, it will be enough to say that here the attending circumstances corroborated Barry's testimony that defendant induced her to testify falsely that she went to Quincy in a truck with a truck driver.

██ As to the question that the corroboration must be on a material issue of fact, we agree, of course, that there can be no perjury where the false testimony is not material to the issue presented, but where the false testimony is capable of influencing the tribunal, then the actual effect of the false testimony is not the determining factor, but its capacity to affect or influence the trial judge in his judicial action and the issue before him, which in this case was the reasonableness of the district attorney in asking for leave to enter an order nolle prosequing the indictment under rule 48 of the Federal Rules of Criminal Procedure. In this state of the record,

Barry's testimony was material. It was the basis for the order granting leave to nolle the case. Her testimony was the matter which influenced the judge in the exercise of his judicial discretion, and as such the false testimony was material to the issue before the court. See Boehm v. United States, 8 Cir., 123 F.2d 791; Fraser v. United States, 6 Cir., 145 F.2d 145; and United States v. Goldstein, 2 Cir., 168 F.2d 666.

Another contention is that the trial judge erred in his instructions to the jury. Defendant cites Weiler v. United States, 323 U.S. 606, 611, 65 S.Ct. 548, 89 L.Ed. 495, and points to the fact that the jury was not instructed that more than the testimony of a single witness was required to justify a guilty verdict.

■ The record discloses that defendant did not tender or request such an instruction, nor did he interpose any objections whatever to any of the instructions given by the court. In fact, when the court inquired whether there were any exceptions to the instructions, his counsel answered "No, sir." In the state of this record, we perceive no grounds for reversing the judgment. Compare Goins v. United States, 4 Cir., 99 F.2d 147, certiorari dismissed, Goins v. United States, 306 U.S. 622, 59 S.Ct. 783, 83 L.Ed. 1027, and Bruno v. United States, 308 U.S. 287, 60 S.Ct. 198, 84 L.Ed. 257.

Finally, it is contended that the court erred in refusing to declare a mistrial. It appears that Barry, while testifying, related a conversation with defendant at the time of her arrest for stealing Thomas' wallet, in which defendant said, "if I wouldn't say anything about him, he would get me a lawyer and get me out of it as he had served time." Later, during her testimony, she related a conversation in which defendant said: " * * * he didn't want me to appear against him, that I should have a heart and that he would kill himself if he had to go back where he came from, and spend a few more years." In both instances, the court struck the testimony and instructed the jury to disregard the statements. The trial judge instructed the jury concerning the rules as to presumption of innocence and reasonable doubt. He told them that they must confine themselves strictly to the testimony and determine "who is telling the truth and who is not telling the truth," and that it was for the jury to determine whether or not defendant induced Barry to testify falsely at the hearing on the motion to nolle prosequi the indictment charging violation of the White Slave Traffic Act.

■ In this state of the record, we have for consideration the question whether defendant's substantial rights were affected by the ruling of the court in denying defendant's motion to declare a mistrial, that is to say, were the stricken statements of the witness so prejudicial as to require reversal. We agree, as a general rule, that in a criminal prosecution, inquiry into a collateral crime unconnected with the offense charged is inadmissible. But reference to the fact that an accused has been convicted or served time does not in all cases require a reversal.

■ The purpose of the first statement was to induce Barry, without involving defendant, to dispose of the charges then pending against her for stealing Thomas' wallet. The second related to the means by which he induced Barry to perjure herself. That statement was one of the means adopted by the defendant to carry out and commit the offense charged, and was admissible, Bracey v. United States, 79 U.S. App.D.C. 23, 142 F.2d 85, 90, and Schwartz v. United States, 9 Cir., 160 F.2d 718.

In Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557, in dealing with the effect of evidence erroneously admitted, 328 U.S. at page 762, 66 S.Ct. at page 1246, the court said: "In the final analysis judgment in each case must be influenced by conviction resulting from examination of the proceedings in their entirety, tempered but not governed in any rigid sense of *stare decisis* by what has been done in similar situations," and, 328 U.S. at page 764, 66 S.Ct. at page 1248, "If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand, * * *."

We have considered the entire record, and when the statements are viewed in their proper relationship to the whole trial, we can say with fair assurance that the stricken statements had no material effect upon the verdict of the jury and there was no miscarriage of justice. Compare Hall v. United States, 84 U.S.App.D.C. 209, 171 F.2d 347, and Campbell v. United States, D.C.Cir., 176 F.2d 45.

The judgment of the District Court is Affirmed.