## UNITED STATES v. HENDRICKSON.
### No. 10688.

United States Court of Appeals
Seventh Circuit.
Nov. 24, 1952.

Rehearing Denied Dec. 23, 1952.

V. M. Jacoby and Jacoby, Patton & Manns, all of Alton, Ill., for appellant.

Marks Alexander, Acting U. S. Atty., Springfield, Ill., George R. Kennedy, Asst. U. S. Atty., and Robert G. Heckenkamp, Asst. U. S. Atty., Springfield, Ill., for appellee.

Before MAJOR, Chief Judge, and FINNEGAN and SWAIM, Circuit Judges.

MAJOR, Chief Judge.

Defendant was found guilty upon an indictment containing four counts, each of which charged subornation of perjury under Sec. 1622, Title 18 U.S.C. From the judgment entered thereon defendant appeals.

The case is an aftermath of a suit brought under the Illinois Liquor Control Act, commonly called the Illinois Dram Shop Act, Chap. 43, Sec. 135, Ill.Rev.Stat. 1949, entitled "Juanita Maher, Anita Maher, an infant, by Juanita Maher, her next friend, and Nancy Maher, an infant, by Juanita Maher, her next friend, Plaintiffs vs. Edward D. Hendrickson, Maurice I. Fuller and Woodrow Wilson Morris, Defendants," in the United States District Court for the Southern District of Illinois. Diversity of citizenship was the basis of jurisdiction. The case was tried before District Judge Charles G. Briggle without a jury, which resulted in a judgment against the plaintiffs. Upon appeal, this court reasoned that the District Court had failed to make findings on certain issues and remanded the case for that purpose. Maher v. Hendrickson, 7 Cir., 188 F.2d 700.

The instant case was heard upon a stipulated statement of facts. It appears therefrom that on the afternoon of December 23, 1948, James Patrick Maher, Woodrow Wilson Morris and his then wife, Geraldine Morris, had several drinks of liquor in the apartment of the Morrises in Alton, Illinois, after which the three of them left the apartment together, bound for Maher's home in West Alton, Missouri, making the trip in Maher's car. On this journey they stopped at a tavern owned by Edward D. Hendrickson (defendant in the instant case), where they remained for a period of approximately forty-five minutes. During this time, "they [Maher and Mr. and Mrs. Morris] ordered several rounds of drinks which were paid for by Maher, and which were served by the bartender on duty, Maurice I. Fuller," and "Maher purchased a pint of whiskey in two one-half pint bottles from Fuller, which were then wrapped by Fuller," and taken by one of the parties from the tavern. These three parties then

returned to the Morris apartment where, "after drinking a part of one of these one-half pint bottles of whiskey," Morris and Maher engaged in a fight which resulted in the death of the latter. Maurice I. Fuller (the bartender and a defendant in the dram shop action) was called by the plaintiff as an adverse witness and testified "that he did not sell or serve any intoxicating drinks or liquors to James Patrick Maher, Woodrow Wilson Morris or Geraldine Morris on the night of December 23, 1948." Louis Garner, a defense witness, testified that he was present in defendant's tavern at the time of the occurrence in question and that "Maurice I. Fuller, did not serve or sell any intoxicating drinks or liquors to Maher or Mr. or Mrs. Morris." T. K. Brawley testified as a defense witness that he was present at the time of the alleged occurrence and that the "bartender Maurice I. Fuller did not sell or serve any intoxicating drinks to Maher or Mr. or Mrs. Morris."

Subsequently, Maurice I. Fuller was indicted by the Grand Jury, charged with perjury, upon the basis of the testimony he had given in the dram shop case, upon which charge he was tried and convicted. In that case, both Garner and Brawley testified on behalf of the defendant substantially as they had in the dram shop case, that is, that they were present at the time of the occurrence and that Fuller did not serve or sell any intoxicating liquor to Maher or Mr. or Mrs. Morris. Subsequently, the Grand Jury returned separate indictments against Garner and Brawley, charging perjury in their testimony given both in the dram shop case and in the perjury case against Fuller. Both were tried and convicted on such perjury charges.

As noted, defendant Hendrickson in the case before us was charged with subornation of perjury in four counts. Count 1 charged that he procured Brawley to testify in the dram shop case that no drinks were sold or served to Morris, his wife or Maher, knowing that such testimony was false; count 2 charged that he procured Brawley to give similar testimony in the perjury trial of Fuller, knowing it to be false; count 3 charged defendant with pro-

curing the testimony of Louis Garner in the dram shop case, knowing it to be false, and count 4 charged that defendant procured the testimony of Garner in the perjury trial of Fuller, knowing it to be false. In summary, counts 1 and 3 are predicated upon the alleged perjured testimony given by Brawley and Garner respectively in the dram shop case, and counts 2 and 4 upon the alleged perjured testimony given by the same witnesses respectively in the trial of the perjury case against Fuller.

In the trial of the instant case it was stipulated that Fuller had admitted his false testimony in the dram shop case and that Garner and Brawley had admitted the falsity of their testimony both in the dram shop case and in the criminal case against Fuller, which false testimony was given at the behest and upon the procurement of the defendant Hendrickson.

The Illinois Dram Shop Act upon which the civil action for damages was predicated provides, so far as presently material, for a right of action "against any person or persons who shall, by selling or giving alcoholic liquor, have caused the intoxication, in whole or in part, of such person". It also creates a liability against the owner of a building who permits its occupancy with knowledge that alcoholic liquors are to be sold therein.

Defendant contends that perjury cannot rest upon the testimony in question, now admitted to have been false, because it was not "material" to any issue before the court, either in the trial of the dram shop case or in that of the perjury case against Fuller. The point appears to be that Maher and Morris were intoxicated when they entered defendant's tavern and, therefore, the liquor which they procured from Fuller did not cause their intoxication "either in whole or in part." Obviously, there could be no subornation of perjury by Hendrickson if the admittedly false testimony of Fuller, Brawley and Garner did not constitute perjury.

Recognition of the fact that we are not reviewing a judgment obtained in a dram shop case will go far in removing the doubt which defendant attempts to engender. And we need not be concerned with the his-

tory, purpose or the objective sought by the Dram Shop Act or whether it is penal or remedial in character. Neither do we need set sail on an uncharted sea in an attempt to determine if a man already drunk can be further intoxicated by the consumption of alcoholic liquor. Whether such consideration would be appropriate in the trial of a dram shop case is of no relevancy here.

▪ In the civil case wherein the alleged perjured testimony was originally given, plaintiff in order to recover was required to allege and prove (1) that the defendant sold or gave intoxicating liquor to the deceased and (2) that such intoxicating liquor contributed in some degree, no matter how slight, to his intoxication. Cook v. Kirgan, 332 Ill.App. 294, 295, 75 N.E.2d 120; Osborn v. Leuffgen, 381 Ill. 295, 298, 45 N.E.2d 622. In the absence of proof that a sale or gift of intoxicating liquor was made, no case would have been proven. The argument that the false testimony denying such sales was not material to the issue is without merit. That it was calculated to affect the result and that it was offered for such purpose cannot be doubted. And the fact, if such it be, as contended by the defendant, that the liquor thus sold did not cause in whole or in part the intoxication of the deceased, does not militate against this conclusion. As this court recently stated in United States v. Henderson, 7 Cir., 185 F.2d 189, 191:

> "There can be no perjury where the false testimony is not material to the issue presented, but where the false testimony is capable of influencing the tribunal, then the actual effect of the false testimony is not the determining factor, but its capacity to affect or influence the trial judge in his judicial action and the issue before him * *."

And, referring to the alleged perjured testimony, this court further stated, 185 F.2d at page 192:

> "Her testimony was the matter which influenced the judge in the exercise of his judicial discretion, and as such the false testimony was material to the issue before the court." (Citing cases.)

Furthermore, the alleged perjured testimony in the matter before us was not only calculated to and offered for the purpose of affecting the result, as noted, but it evidently produced, at least in part, the result sought. It is plain from the memorandum opinion of Judge Briggle that he regarded the question as to whether liquor was sold as material and that he relied heavily on the alleged perjured testimony in that respect in deciding the case in favor of the defendants. He stated, and correctly so, "Another fact, a basic fact, is of course whether or not they obtained any liquor in this tavern." He discusses and evaluates the false testimony given by Fuller, Brawley and Garner that no sales were made, together with the testimony of Mrs. Morris that sales were made, and expresses a doubt as to whether the testimony of Mrs. Morris in that respect should be accepted.

It may be true, as pointed out by the government, that even though defendant's contention be accepted as to the immateriality of the false testimony, it could only relate to counts 1 and 3, which are predicated upon the testimony given in the dram shop case; in other words, that it would not relate to counts 2 and 4, which are predicated upon the false testimony given in the perjury case against Fuller. Assuming, however, that there is any distinction in this respect, it would be to the detriment and not to the benefit of the defendant. In any event, our conviction that the false testimony given in the dram shop case was material to the issue therein involved and that it constituted perjury makes it useless for us to discuss the situation further and, as noted, it was stipulated that defendant procured the giving of the false testimony.

The judgment is affirmed.