**UNITED STATES of America, Plaintiff,**

v.

**Frank J. PROVINZANO, Defendant.**

**No. 70–CR–44.**

United States District Court, E. D. Wisconsin.

Oct. 20, 1971.

David J. Cannon, U. S. Atty., by Steven Underwood, Milwaukee, Wis., for plaintiff.

Coffey, Lerner & Murray, by William M. Coffey and Robert J. Lerner, Milwaukee, Wis., for defendant.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

The indictment returned against the defendant in this action contains five counts. Count I charges that the defendant, as an employee of the Internal Revenue Service, used his official position to oppress a subordinate, thereby violating 26 U.S.C. § 7214(a) (1). Count II charges the defendant with extortion, a violation of 18 U.S.C. § 872. The remaining three counts of the indictment allege that the defendant committed perjury, in violation of 18 U.S.C. § 1621. A motion to suppress certain evidence was brought by the defendant after the return of the indictment; such motion was denied by this court, after a hearing, in a decision and order filed on May 3, 1971. 326 F.Supp. 1066 (E.D. Wis.1971).

Counts I and II of the indictment were dismissed in a decision and order that also required the government to elect between counts III and IV. 50 F.R.D. 361 (E.D.Wis.1970). On September 29, 1970, the government elected to proceed upon count III. In addition, at the close of the government's case during the trial to the court of this action, the defendant's motion for judgment of acquittal as to count V of the indictment was granted. Thus, only count III remains for resolution and, following the trial, counsel for the government and for the defendant have submitted briefs setting forth their respective positions.

Count III of the indictment charges:

"That on or about January 15, 1970, in the Eastern District of Wisconsin, FRANK J. PROVINZANO, having duly taken an oath before a competent officer and person, that is, Victor R. Weber, Inspector, Internal Security, assigned to the Office of the Regional Inspector, Midwest Region, Internal Revenue Service, who was then and there inquiring into a case of official interest to the Internal Revenue Service in which a law of the United States authorizes an oath to be administered, that he would testify truly, did wilfully and knowingly and contrary to said oath state material matter which he did not believe to be true, that is to say the following:

Question: 'Have you ever, at any time, under any circumstances, made any homosexual advances to Mr. William Lassow, a Tax Technician, under your general supervision?'

Answer: 'No.'

The aforesaid testimony of Frank J. Provinzano as he then and there well knew and believed was not true and that he well knew that such homosexual overtures and advances had been made to Mr. William Lassow, a Tax Technician under his general supervision; all in violation of Section 1621, Title 18, United States Code of Laws."

The question and the defendant's answer which form the basis of the allegation in count III of the indictment are related to the crime which had been charged in count I. Equally significant, however, is the fact that the interrogation of the defendant came after the Internal Revenue Service had conducted a conclusive investigation into what Mr. Weber subsequently testified was an "administrative personal misconduct matter."

The evidence received both at the hearing on the defendant's motion to suppress and at the trial indicates that the Internal Revenue Service's investigation was virtually completed by the time of the interview on January 15th. Thus, the interrogation of Mr. Provinzano might have been regarded by the Internal Revenue Service as "the sew-up" of its case, representing its hope that the defendant would confirm what the investigation already had brought forth. Indeed, Mr. Weber stated at the hearing on the motion to suppress that,

"As I recall, I was told to take a [Form] 52 ["Request for Personnel Action"] with me in the event * * [the defendant] * * * recognized the potential embarrassment to him-

self and the Service in this matter, and would want to resign * * *." Although the defendant was not asked to resign at the time of the interview, he did submit his resignation on February 6, 1970.

On December 23, 1969, William Lassow came to the office of William Stohr, Mr. Lassow's immediate superior at the Wausau, Wisconsin, office of the Internal Revenue Service. Mr. Lassow reported to Mr. Stohr that on the evening of December 21, 1969, while Mr. Lassow was visiting the defendant in his room at a Wausau motel, the defendant made homosexual advances towards him. On December 30, 1969, Mr. Stohr related what Mr. Lassow had told him to R. E. Zarek of the internal security division of the Internal Revenue Service.

On the following day, Inspector Paul McElliott traveled to Wausau and interviewed both Mr. Lassow and Mr. Stohr; he also obtained Mr. Lassow's affidavit setting forth the events of December 21, 1969.

In late December, 1969, Mr. Lassow was selected to teach a tax technicians' class in Milwaukee on a temporary basis; his assignment required that he begin his new duties on January 5, 1970. On January 4, 1970, a Sunday, Mr. McElliott and two other inspectors met Mr. Lassow in Milwaukee where Mr. McElliott instructed Mr. Lassow to take a room at a Milwaukee hotel to which Mr. Lassow previously had been directed by the defendant. Mr. Lassow was cautioned that any visit by the defendant to Mr. Lassow's hotel room would have to be at the defendant's instance and that any homosexual activity would have to be initiated by the defendant.

On the evening of January 5, 1970, Mr. Lassow and the defendant dined together and, at about 9:00 p. m., they returned to Mr. Lassow's hotel room; previously, with Mr. Lassow's permission, Mr. McElliott had secreted himself in a closet in the room. From a small hole in the closet door Mr. McElliott observed what he and Mr. Lassow subsequently testified were homosexual advances on the part of the defendant; both Mr. Lassow and Mr. McElliott also testified that the defendant made statements which corroborated the events in Wausau of December 21, 1969.

By January 6, 1970, the attention of William McCarthy, the director of the internal security division, had been brought to the investigation of the defendant which had been conducted. On January 10th, a "preliminary report" of the investigation was forwarded to Mr. McCarthy by John Kelly, the acting assistant regional inspector.

The preliminary report and the exhibits which accompanied it disclose that an exhaustive inquiry into the defendant's affairs and his contacts with Mr. Lassow after October 23, 1969, already had been accomplished. The record contains not only the affidavit of Mr. Lassow prepared on December 31, 1969, and the preliminary report, itself, but an affidavit from Mr. Stohr, a second affidavit from Mr. Lassow, inspectors' notes, motel registration cards, and correspondence from the defendant to Mr. Lassow, all of which appear to have been assembled prior to the date of Mr. Weber's questioning of the defendant.

The extensiveness of the investigation of Mr. Provinzano and the fact that it seems to have been completed prior to the time that the defendant was interrogated make it doubtful that the inquiry directed to the defendant in count III of the indictment possessed the "materiality" necessary to support a conviction under 18 U.S.C. § 1621. The internal security division had characterized its investigation as an "administrative" one, thus establishing that the defendant's discharge or resignation would end the matter.

18 U.S.C. § 1621 provides, in part:

"Whoever, having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly,

or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, wilfully and contrary to such oath states or subscribes *any material matter* which he does not believe to be true, is guilty of perjury * * *." (Emphasis added)

In United States v. Henderson, 185 F. 2d 189, 191 (7th Cir. 1950), the court observed that in testing materiality

" * * * the actual effect of the false testimony is not the determining factor, but its capacity to affect or influence the trial judge in his judicial action and the issue before him * *."

United States v. Moran, 194 F.2d 623, 626 (2d Cir. 1952), cert. denied 343 U.S. 965, 72 S.Ct. 1058, 96 L.Ed. 1362, describes the test of materiality of false testimony as:

" * * * whether the testimony has a natural effect or tendency to influence, impede or dissuade the investigating body from pursuing its investigation."

See also United States v. Rivera, 448 F. 2d 757 (7th Cir. 1971); United States v. Stone, 429 F.2d 138, 140 (2d Cir. 1970); Barnes v. United States, 378 F.2d 646, 649 (5th Cir. 1967), cert. denied 389 U.S. 917, 88 S.Ct. 246, 19 L.Ed.2d 273; 390 U.S. 972, 88 S.Ct. 1056, 19 L.Ed.2d 1184 (1968); United States v. Marchisio, 344 F.2d 653, 665 (2d Cir. 1965); United States v. Parker, 244 F.2d 943, 950 (7th Cir. 1957), cert. denied 355 U.S. 836, 78 S.Ct. 61, 2 L.Ed. 2d 48.

■ It is incumbent upon the government to prove that a person accused of perjury under § 1621 had knowledge that his statements made under oath were false at the time that he made them. United States v. Sweig, 441 F.2d 114, 117 (2d Cir. 1971). On the other hand, it is no defense to a charge of perjury that the investigating body before whom the allegedly false statements were made did not establish the existence of a crime. United States v. Dippolito, 433 F.2d 1049, 1050 (9th Cir. 1970), cert.

denied 401 U.S. 940, 91 S.Ct. 939, 28 L. Ed.2d 220 (1971). Furthermore, "it is not necessary that the evidence given is material to the main issue; it is sufficient if it is material to any proper matter of inquiry." Blackmon v. United States, 108 F.2d 572, 574 (5th Cir. 1940), quoting from State v. Lavalley, 9 Mo. 834; see also Barnes v. United States, supra.

■ Even if it may be assumed that the defendant's answer in count III of the indictment is false, it is my opinion that the question which provoked such answer was immaterial in light of the consummate investigation which already had been conducted. It is apparent that the interrogation of the defendant was held at a time when the Internal Revenue Service was prepared to require the defendant's resignation. In fact, Mr. Weber testified at the hearing on the motion to suppress that, immediately following the interview, he had a transcript prepared and was able to approach the United States attorney on Monday, January 19, 1970, with evidence of what he considered to be "a potential perjury case."

The alacrity with which the internal security division proceeded to seek an indictment against Mr. Provinzano is inconsistent with a position that the interrogation of the defendant was part of an on-going investigation and supports the conclusion that the defendant's allegedly false answer to the question in count III lacked even the slightest capacity to impede the administrative investigation. In the words of the court of appeals for this circuit (United States v. Henderson, supra, 185 F.2d at page 191), Mr. Provinzano's answer did not in any degree have "the capacity to affect or influence" the Internal Revenue Service determination to discharge him as a result of its past investigation; indeed, his alleged perjury did not even briefly delay (let alone dissuade) its decision to pursue criminal prosecution.

This problem is much like that discussed in the very recent case of United States v. Freedman, 445 F.2d 1220 (2d

Cir. 1971), where, at page 1226, the court stated:

> "* * * in order for a knowingly false statement to be material within the purview of § 1621, it must be shown that a truthful answer would have been of sufficient probative importance to the inquiry so that, *as a minimum, further fruitful investigation would have occurred.* Proof of this was absent at trial, and we repeat once again that the materiality of a false statement must be proved to sustain a perjury conviction." (Emphasis added)

It is clear that all the needed or "fruitful" investigation in the administrative action of the Internal Revenue Service already had been accomplished by January 15, 1970; no significant investigation occurred *after* the date of the interview with the defendant to substantiate the charge contained in count I of the indictment or to support the administrative determination to charge Mr. Provinzano with personal misconduct.

The government urges that the court must ignore the *actual* result of Mr. Provinzano's answer and look to the possible or potential impact upon the investigators. Upon the facts of this case, under either approach, the defendant's response was immaterial. In my opinion, the Internal Revenue Service had completed its administrative case against Mr. Provinzano and his denial was totally devoid of either actual or potential capacity to mislead the investigators. Nothing that Mr. Provinzano could have said at the January 15th interrogation would have provoked "further fruitful investigation", in the words of United States v. Freedman, supra. The government has failed to prove an essential element of the perjury charge, and count III must be dismissed. Cf. United States v. Laut, 17 F.R.D. 31 (S.D.N.Y.1955).

The finding that there has not been a sufficient showing of materiality disposes of the need to consider the competency of Mr. Weber to administer the oath to the defendant prior to his interrogation.

Therefore, it is ordered that count III of the indictment be and hereby is dismissed, and it is also ordered that a judgment of acquittal be entered.